CONE MILLS CORPORATION, Appellee v. ALLSTATE INSURANCE COMPANY, Appellant

No. 9318SC349

(Filed 17 May 1994)

Insurance § 918 (NCI4th) — products liability — legal expenses — coverage — question of law

There was no prejudicial error in an action for a declaratory judgment and breach of an insurance contract where the issue was whether legal expenses were covered by the policy and the court admitted evidence on the intent of the parties and submitted the issue to the jury. The construction and application of the policy was an issue of law for the court rather than an issue of fact for the jury; however, there was no prejudice because the policy provisions are clear and unam-

biguous and specifically include all sums paid for legal expenses, and the jury answered the issue in plaintiff's favor.

**Am Jur 2d, Insurance §§ 271, 272, 276-278.**

Appeal by defendant from order entered 3 September 1992 by Judge C. Preston Cornelius in Guilford County Superior Court. Heard in the Court of Appeals 1 February 1994.

Plaintiff Cone Mills Corp. ("Cone") filed this action for declaratory judgment and breach of an insurance contract. The facts giving rise to this action are not in dispute. In 1986, Cone was named as a defendant in a product liability action (hereinafter "the *Ostrander* case") brought in the United States District Court in Minnesota on behalf of a minor child who was allegedly severely injured when sleepwear fabric manufactured by Cone caught fire.

At the time of the child's injury, Cone's liability insurance scheme included a self-insured retention ("SIR") in the amount of $250,000.00. Cone also had in effect two additional insurance policies issued by American Re-insurance Company ("Am Re") and by Northbrook Excess and Insurance Company, the predecessor in interest of defendant Allstate ("the Northbrook policy"). The Am Re policy provided general liability coverage for claims above $250,000.00 and up to $500,000.00. The Northbrook policy provides coverage for general liability claims above $500,000.00 and up to $25,000,000.00 per occurrence.

Allstate and Am Re received timely notice of the *Ostrander* case and Allstate acknowledged the potential for the claim to enter Allstate's layer of coverage. Cone retained a Minnesota law firm to defend the *Ostrander* claims. Pursuant to Allstate's request, plaintiff instructed the law firm to keep Allstate and Am Re apprised of the status of the case on an as-needed basis and to provide the two insurers with any information they requested about the case. While settlement negotiations were ongoing, the Minnesota law firm continued to prepare the case for trial. For these services, the law firm submitted itemized bills on a monthly basis.

At a settlement conference convened in the *Ostrander* case in October 1989, Allstate's counsel called upon Cone to tender its $250,000.00 SIR and also received authorization from Am Re to tender its limits of $250,000.00 toward settlement with the *Ostrander* plaintiffs. In January 1990, Allstate reached a settlement of the

CONE MILLS CORP. v. ALLSTATE INS. CO.

[114 N.C. App. 684 (1994)]

case by paying, in addition to the amounts contributed by Cone and Am Re, cash and annuities totalling more than $2,500,000.00. At the time of settlement, Cone had incurred, in addition to the $250,000.00 paid toward the settlement, legal fees in defense of the case which totalled $501,374.34. Cone filed this action when its subsequent requests to Allstate and Am Re for reimbursement of its defense expenses were rejected. Cone and Am Re reached a settlement before trial. The jury returned a verdict for Cone against Allstate in the amount of $501,374.34. After allowing a credit for the amount which Am Re paid Cone in settlement of Cone's claim against it for defense costs, the trial court entered judgment against Allstate. Allstate appealed.

*Smith Helms Mulliss & Moore, by James A. Medford and Larissa Jones Erkman, for plaintiff-appellee.*

*Wilson & Iseman, by G. Gray Wilson and Urs R. Gsteiger, for defendant-appellant.*

MARTIN, Judge.

The parties advance several assignments and cross-assignments of error. The dispositive issue, however, is whether the trial court erred when it admitted evidence with respect to the intent of the parties and permitted the jury to determine whether the parties intended that the defense costs incurred in the *Ostrander* case would be included as part of the self-insured retention of $250,000.00 under the Northbrook policy. Both parties argue, and we agree, that the construction and application of the Northbrook policy was an issue of law for the court, rather than one of fact for the jury. Thus, it was error to submit the issue of intent to the jury. Moreover, we agree with Cone that the Northbrook policy requires that Allstate reimburse Cone for legal expenses incurred in defense of the *Ostrander* litigation and, therefore, Cone's motion for a directed verdict should have been granted. Because the jury answered the issue in Cone's favor, however, Cone was not prejudiced by the error and we will not disturb the trial court's judgment.

Under North Carolina law "the construction and application of the policy provisions to the undisputed facts is a question of law for the court." *Walsh v. National Indemnity Co.*, 80 N.C. App. 643, 647, 343 S.E.2d 430, 432 (1986). *See also, Computer Sales Int. v. Forsyth Mem. Hosp.*, 112 N.C. App. 633, 436 S.E.2d 263 (1993), *Tyler v. Nationwide Mut. Ins. Co.*, 101 N.C. App. 713, 401 S.E.2d

CONE MILLS CORP. v. ALLSTATE INS. CO.

[114 N.C. App. 684 (1994)]

80 (1991). Where the policy language is clear and unambiguous, the court's only duty is to determine the legal effect of the language used and to enforce the agreement as written. *Colon v. Bailey*, 76 N.C. App. 491, 333 S.E.2d 505 (1985), *reversed on other grounds*, 316 N.C. 190, 340 S.E.2d 478 (1986). Furthermore, in the absence of an ambiguity, the language used must be given its plain, ordinary, and accepted meaning. *Integon Gen. Ins. v. Universal Underwriters Ins.*, 100 N.C. App. 64, 394 S.E.2d 209 (1990). No ambiguity exists in a contract unless the court finds that the language of the parties is fairly and reasonably susceptible to either of the constructions for which the parties contend. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E.2d 518 (1970). If the court determines that the contract is not ambiguous, the court must enforce the contract as it was written and may not remake the contract under the guise of interpreting the ambiguous provisions. *Id.*

There is no question that the Northbrook policy provided coverage for the *Ostrander* claim. The only question is whether the policy provided coverage for Cone's defense costs. To determine that question, we must examine the Limitations of Liability provision and Ultimate Net Loss definition contained in the policy. The relevant portions of these provisions are as follows:

LIMIT OF LIABILITY. The Company [Allstate] shall only be liable for the Ultimate Net Loss in excess of either [¶] A. The limits of the underlying Insurances as set out in the attached SCHEDULE OF UNDERLYING POLICES in respect of each Occurrence covered by said underlying insurances . . . .

ULTIMATE NET LOSS. "Ultimate Net Loss" shall mean the total sum which the Insured, or the Insured's underlying insurance as scheduled, or both, become obligated to pay by reason of Personal Injuries . . . either through adjudication or compromise, and shall also include expenses consisting of: hospital, medical and funeral charges; all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums on attachment or appeal bonds, interest, expenses for docotors [sic], lawyers, nurses, and investigators and other persons; litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence of any Occurrence covered hereunder.

In our view, the foregoing policy provisions are clear and unambiguous. The term Ultimate Net Loss specifically includes all sums paid for legal expenses. In *Vesta Ins. Co. v. Amoco Production*

*Co.*, 986 F.2d 981 (5th Cir. 1993), *cert. denied*, 126 L.E.2d 48, 114 S.Ct. 80 (1993), the court examined the same definition of Ultimate Net Loss and held that "all litigation costs and expenses are simply built into the determination of [the company's] 'ultimate net loss'." *Id.* at 989. The court found that the policy provision "expressly and unambiguously" included court costs and attorney's fees. *Id.* We likewise hold that defense costs are clearly included in the determination of Ultimate Net Loss. .

The Limit of Liability section determines what Allstate will be liable for under the Northbrook policy. This section provides that Allstate is liable only for the Ultimate Net Loss in excess of the limits of the policies set out in the "Schedule of Underlying Policies." The underlying schedule lists Cone's SIR of $250,000.00 and the Am Re policy for $250,000.00. In essence, this provision provides a floor, or level, at which Allstate's excess coverage begins. The floor is determined according to the schedule of underlying policies. Accordingly, Allstate is liable for the Ultimate Net Loss which exceeds Cone's SIR and Am Re's policy. Once Cone tendered the limits of its SIR and Am Re tendered the limits of its coverage toward the settlement, Allstate became liable for the Ultimate Net Loss in excess of the amounts tendered. In other words, Allstate is liable for the Ultimate Net Loss above the $250,000.00 tendered for settlement by Cone and the $250,000.00 tendered for settlement by Am Re. Since we have already determined that Ultimate Net Loss includes all defense related costs, Allstate is clearly liable for the *Ostrander* defense costs under the Northbrook policy.

Allstate, however, posits three arguments to escape liability for the *Ostrander* defense costs. We conclude that none of these arguments are reasonable interpretations of the Northbrook policy. Under the interpretations urged by Allstate, Cone would pay in excess of $750,000.00, over three times the limit of its SIR, on the *Ostrander* claim. Given the fact that the definition of Ultimate Net Loss, as contained in the policy, explicitly includes defense costs, Allstate's position is unreasonable. Moreover, its interpretations of the Northbrook policy are not supported by North Carolina case law.

First, Allstate asserts that, because of its status as an excess carrier, it is under no obligation to pay Cone's defense costs from the *Ostrander* claim. Allstate maintains that the law of primary and excess insurance carriers requires the primary carrier to pre-

## CONE MILLS CORP. v. ALLSTATE INS. CO.

sent the defense and pay for all costs associated with such defense without reimbursement from the excess carrier. This argument fails because Allstate's relationship with Cone is not one of excess carrier to primary carrier.

The question of whether a self-insured retention is the equivalent of primary insurance, as argued by Allstate, is addressed in *Wake County Hosp. System v. National Cas. Co.*, 804 F.Supp. 768 (E.D.N.C. 1992), *affirmed*, 996 F.2d 1213 (4th Cir. 1993). In *Wake County Hosp.*, the district court held that the SIR did not constitute "other insurance." *Id.* at 777. The court reasoned that "under a self-insurance scheme, no written insurance policy is issued by another individual or entity nor is a premium paid because obviously a business which is self-insured does not need to pay itself to protect against its own risk of loss." *Id.* at 775. We find the court's reasoning persuasive. Cone did not issue a policy to itself; nor did it pay a premium for the $250,000.00 SIR. Thus, Cone's SIR does not constitute a primary policy.

Additional support for this position exists. "[I]nsurance has been defined as a contract through which one party indemnifies another against loss due to certain specified contingencies, but the term 'self-insurance' has no precise legal meaning." *Self-Insurance against liability as other insurance within the meaning of liability insurance policy*, 46 A.L.R. 4th 707, 710. In general, self-insurance against liability has not been held to be "other insurance" within the meaning of a liability insurance policy, although there is authority to the contrary, particularly when the self-insurance expressly provides that it is primary to other insurance. *Id.* There is no evidence in the record that Cone's SIR stated that it would be primary to the policies of Am Re and Allstate. Consequently, Cone is not the primary carrier in this case and Allstate cannot escape liability based on this argument.

Second, Allstate maintains that its policy did not attach until the time of settlement, when the limits of Cone's SIR and Am Re's coverage were exhausted, and, therefore, it could not be liable for defense costs incurred by Cone up to that point. We disagree. Under the provisions of Allstate's policy, it is liable for the Ultimate Net Loss in excess of the underlying Am Re policy and Cone's SIR. The Allstate policy contains no time limitation within which expenses covered under the definition of Ultimate Net Loss must be incurred. Moreover, the Allstate policy allows Cone one year

within which to make written demand on Allstate for reimbursement of those expenditures covered under Ultimate Net Loss.

The various terms of an insurance policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. All clauses of the policy are to be construed, if possible, so as to bring them into harmony. *Trust Co.*, 276 N.C. at 355, 172 S.E.2d at 522. "Where the language of a contract is plain and unambiguous, construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in light of the undisputed evidence as to the custom, usage and meaning of its terms." *First Citizens Bank & Trust Co. v. McLamb*, 112 N.C. App. 645, 649-50, 439 S.E.2d 166, 169 (1993), *quoting Martin v. Martin*, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975). Thus, Allstate is liable for the defense costs regardless of when the policy attached because a contrary interpretation would ignore those provisions of the contract discussed above.

Allstate mistakenly relies on the case of *Harnischfeger Corp. v. Harbor Ins. Co.*, 927 F.2d 974 (7th Cir. 1991), *cert. denied*, 112 S.Ct. 189 (1991), for the proposition that defense costs incurred prior to attachment are not included in the limits of the underlying policy. *Harnischfeger* is inapposite to the present case. In *Harnischfeger*, the issue was whether the excess insurer became liable on the policy when the self-insured had paid out-of-pocket expenses totalling the underlying limit of liability or when the self-insured had paid out claims in the amount of the underlying limit. The policy in *Harnischfeger* never attached. This means that the excess insurer never became liable on the underlying claim. The court held that since the policy had not attached, the excess carrier could not be held liable for the defense costs.

There is a fundamental difference in the present case. Here, the Northbrook policy did attach, because Allstate became liable on the *Ostrander* claim. This is the fundamental difference. If the Northbrook policy had not attached, Allstate would **not be liable for any costs** associated with the *Ostrander* claim. However, because the policy did attach, Allstate is liable for the Ultimate Net Loss in excess of the underlying insurances. This case would parallel *Harnischfeger* only if the *Ostrander* claim had not exceeded the limits of the Am Re policy. Since that is not the case, *Harnischfeger* does not support Allstate's position.

CONE MILLS CORP. v. ALLSTATE INS. CO.

[114 N.C. App. 684 (1994)]

Finally, Allstate claims that the Assistance & Cooperation Clause shows an intent for defense costs to be excluded from coverage. The Assistance and Cooperation clause states in part:

The Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured, but the Company shall have the right and shall be given the opportunity to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding relative to an Occurrence where the claim or suit involves, or appears reasonably likely to involve the Company.

This policy provision concerns whether Allstate will become involved in the actual defense of the claim itself. Allstate's argument that this provision has been interpreted to exclude the excess carrier from the obligation to defend is correct, but irrelevant. Cone did not ask Allstate to provide a defense of the *Ostrander* suit. However, Allstate's further contention that the Assistance & Cooperation Clause also relieves Allstate from the obligation to reimburse Cone for defense costs is incorrect. In *Institute of London Underwriters v. First Horizon*, 972 F.2d 125 (5th Cir. 1992), cited by Allstate, the court decided that since the excess carrier could not be called upon to assume the defense, the excess carrier did not have to indemnify the **primary** carrier for the defense costs incurred on the claim. *Institute of London Underwriters* is distinguishable because it involved a dispute between the primary carrier and the excess carrier. However, as we have previously determined, Cone, as self-insured, is not a primary carrier. Consequently, we do not interpret the Assistance and Cooperation clause as precluding recovery of defense costs from the excess carrier in this case.

Thus, we hold as a matter of law that the defense costs incurred by Cone in the *Ostrander* case are included in the calculation of the self-insured retention and that, as such, Allstate must indemnify Cone for these defense costs which total $501,374.34. All other assignments of error, with the exception of the assignment concerning the setoff, are moot since those assignments concern the issue of intent and the submission of that issue to the jury. Because the policy is unambiguous, the intent of the parties is irrelevant.

The last issue on appeal is whether the trial court erred in ruling that Allstate was entitled to a credit against the judgment

for the $27,500.00 which Cone received from Am Re and by entering judgment for Cone less $27,500.00. Cone contends that the $27,500.00 which it received pursuant to settlement with Am Re should not be credited to reduce the judgment it received from Allstate since it and Am Re are not joint tortfeasors.

In *Duke University v. St. Paul Mercury Ins. Co.*, 95 N.C. App. 663, 384 S.E.2d 36 (1989), this Court held that the excess carrier was entitled to a credit or setoff for the amount of the settlement with the other carrier. In doing so, we recited the general rule applicable to setoffs in contract actions as follows:

> [D]efendant in an action for breach of contract is entitled to show any matters which go to reduce the amount of loss actually suffered by plaintiff, provided such matters have a proximate relation to the contract . . . . Payment of compensation . . . to plaintiff by a third party on the same cause of action, or partial satisfaction from a third person against whom a claim for damages is made with respect to the same subject matter may be shown in reduction of damages for breach of contract.

*Id.* at 681, 384 S.E.2d at 47, *quoting* 25 C.J.S. Damages Sec. 97, at 1003-05 (1966) (footnotes omitted).

Cone argues that Allstate offered no proof at trial that the Am Re payments were in settlement for Cone's action for declaratory judgment for defense costs. However, Cone's attorneys admitted to the trial judge on the record that the $27,500.00 settlement with Am Re was for attorney's fees. Thus, the trial court correctly reduced the judgment against defendant to prevent Cone from obtaining a double recovery.

In summary, we hold that the trial court erred when it submitted the issue of intent of the parties to the insurance contract to the jury because the contract was unambiguous and should have been interpreted as a matter of law to require Allstate to provide coverage for the legal expenses incurred by Cone in defense of the *Ostrander* suit. However, the error was rendered harmless by the jury's verdict and the entry of judgment thereon. Accordingly, we find no prejudicial error.

Affirmed.

Chief Judge ARNOLD and Judge WYNN concur.