NO. COA13-902-2

NORTH CAROLINA COURT OF APPEALS

Filed:  1 July 2014

MICHAEL I. CINOMAN, M.D., AND
MEDICAL MUTUAL INSURANCE
COMPANY OF NORTH CAROLINA,
    Plaintiffs,

    v.                                    Wake County
                             No. 09 CVS 3164

THE UNIVERSITY OF NORTH
CAROLINA; THE UNIVERSITY OF
NORTH CAROLINA HEALTHCARE
SYSTEM, D/B/A THE UNIVERSITY OF
NORTH CAROLINA HOSPITALS AT
CHAPEL HILL; THE UNIVERSITY OF
NORTH CAROLINA, D/B/A THE
SCHOOL OF MEDICINE OF THE
UNIVERSITY OF NORTH CAROLINA AT
CHAPEL HILL; THE UNIVERSITY OF
NORTH CAROLINA, D/B/A THE
UNIVERSITY OF NORTH CAROLINA
LIABILITY INSURANCE TRUST FUND;
WILLIAM L. ROPER, IN HIS
CAPACITY AS DEAN OF THE SCHOOL
OF MEDICINE OF THE UNIVERSITY
OF NORTH CAROLINA AT CHAPEL
HILL; BRIAN GOLDSTEIN IN HIS
CAPACITY AS CHAIRMAN OF THE
UNIVERSITY OF NORTH CAROLINA
LIABILITY INSURANCE TRUST FUND
COUNCIL; THOMAS M. STERN, AS
GUARDIAN AD LITEM FOR ARMANI
WAKEFALL; AND WAKEMED,
    Defendants.


       Appeal by plaintiffs from order entered 19 April 2013 by

Judge Carl R. Fox in Wake County Superior Court.  Heard in the

Court of Appeals 6 January 2014 and opinion filed 4 March 2014.

Petition for Rehearing allowed 17 April 2014.

*Manning, Fulton & Skinner, P.A., by Michael T. Medford and J. Whitfield Gibson, for plaintiffs-appellants.*

*Hedrick Gardner Kincheloe & Garofalo, LLP, by David N. Allen, J. Douglas Grimes, and M. Duane Jones, for the University of North Carolina defendants-appellees.*

*Tin, Fulton, Walker & Owen, by William Simpson, and Ferguson, Chambers & Sumter, P.A., by James E. Ferguson II, for defendant-appellee Thomas M. Stern, as Guardian ad Litem for Armani Wakefall.*

MARTIN, Chief Judge.

Plaintiffs Michael I. Cinoman, M.D. and Medical Mutual Insurance Company of North Carolina ("MMIC") appeal from an order granting UNC defendants'[1] motion to stay this declaratory action pending a final resolution of the underlying malpractice action. On 4 March 2014, this Court filed an opinion reversing the stay order. UNC defendants filed a Petition for Rehearing on 8 April 2014, which we allowed on 17 April 2014. Upon reconsideration, we reach the same disposition but modify the originally filed opinion. This opinion supersedes the previous opinion filed 4 March 2014.

In February 1999, Dr. Cinoman served as a temporary

---

[1] UNC defendants are all defendants except for Thomas M. Stern, who is a nominal defendant due to his interest in the insurance coverage, and WakeMed, which is not a party to this appeal.

attending physician for full-time rotations in the University of North Carolina Hospitals at Chapel Hill Pediatric Intensive Care Unit ("UNC-PICU") as part of an agreement to assist UNC defendants with a staffing shortage in the UNC-PICU. On 21 June 2007, Thomas M. Stern, as guardian ad litem for Armani Wakefall, initiated a medical malpractice action against Dr. Cinoman and others for damages allegedly incurred by Wakefall as a result of negligent treatment she received at the UNC-PICU in February 1999 ("underlying malpractice action").

Dr. Cinoman is insured under a professional liability insurance policy issued by MMIC, which has treated its coverage as broad enough to cover the claims asserted against Dr. Cinoman in the underlying malpractice action. UNC defendants maintained that Dr. Cinoman is not entitled to coverage under the University of North Carolina Liability Insurance Trust Fund ("UNC-LITF"), which provides coverage for claims against employees and agents of UNC defendants, because he was not a full-time employee of UNC defendants at the time of the events giving rise to the underlying malpractice action. In the absence of coverage by the UNC-LITF, the damages demanded in the underlying malpractice action allegedly exceed Dr. Cinoman's professional liability insurance coverage.

On 17 February 2009, plaintiffs filed this declaratory

judgment action to determine whether Dr. Cinoman is entitled to coverage under the UNC-LITF, in addition to his coverage under the MMIC policy, and the relative liabilities of MMIC and the UNC-LITF. Plaintiffs and UNC defendants moved for summary judgment, and the trial court granted summary judgment in favor of UNC defendants on 15 April 2010. On appeal, this Court reversed the summary judgment order, concluding that there were questions of material fact that rendered summary judgment for either party inappropriate, and remanded the case for trial. *Cinoman v. Univ. of N.C.*, 216 N.C. App. 585, 718 S.E.2d 424 (2011) (unpublished), *disc. review denied*, 365 N.C. 573, 724 S.E.2d 527 (2012).

On 28 February 2013, UNC defendants moved to stay further proceedings in this action pending the final resolution of the underlying malpractice action. In an order entered 19 April 2013, the trial court granted the motion to stay, finding that while an actual controversy exists as to the UNC-LITF's duty to defend, no such controversy exists as to the UNC-LITF's duty to indemnify until the underlying malpractice action is finally resolved. Plaintiffs appeal from the order pursuant to N.C.G.S. §§ 1-277 and 7A-27. UNC defendants moved to dismiss the appeal as interlocutory.

_____

We must first determine whether the trial court's interlocutory order granting the stay is immediately appealable. Although interlocutory orders are not generally appealable, immediate appeal is available under N.C.G.S. §§ 1-277 and 7A-27 from an interlocutory order which affects a substantial right. *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 578-79 (1999), *on remand*, 137 N.C. App. 82, 527 S.E.2d 75 (2000). Where there is a pending suit or claim, an interlocutory order concerning the issue of whether an insurer has a duty to defend in the underlying action "affects a substantial right that might be lost absent immediate appeal." *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 137 N.C. App. 1, 4, 527 S.E.2d 328, 331 (2000). We therefore conclude that the appeal is properly before us.

A survey of the relevant case law indicates that our review on appeal of an order granting a stay is an abuse of discretion standard. *See Watters v. Parrish*, 252 N.C. 787, 791, 115 S.E.2d 1, 4 (1960) ("Whether one lawsuit will be held in abeyance to abide the outcome of another rests in the sound discretion of the trial judge, and his action will not be disturbed on appeal, unless the discretion has been abused . . . ."); *see also Lawyers Mut. Liab. Ins. Co. of N.C. v. Nexsen Pruet Jacobs & Pollard*, 112 N.C. App. 353, 356, 435 S.E.2d 571, 573 (1993)

(concluding that order staying declaratory judgment action to permit trial of parallel action in another state is reviewed for abuse of discretion and declining to adopt a *de novo* standard of review); *Home Indem. Co. v. Hoechst-Celanese Corp.*, 99 N.C. App. 322, 325, 393 S.E.2d 118, 120 (holding that order staying litigation pending final disposition of similar action in federal court "is a matter within the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion"), *appeal dismissed and disc. review denied*, 327 N.C. 428, 396 S.E.2d 611 (1990). "'A [trial] court by definition abuses its discretion when it makes an error of law.'" *In re A.F.*, __ N.C. App. __, __, 752 S.E.2d 245, 248 (2013) (alteration in original) (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 414 (1996)).

On appeal, plaintiffs contend the trial court erred by granting the stay based on its determination that no actual controversy exists as to the UNC-LITF's duty to indemnify until the underlying malpractice action is finally resolved. We agree.

"An actual controversy between adverse parties is a jurisdictional prerequisite for a declaratory judgment." *Newton v. Ohio Cas. Ins. Co.*, 91 N.C. App. 421, 422, 371 S.E.2d 782, 783 (1988). An actual controversy exists where an insurer seeks

a determination that primary coverage is not provided under its policy and is instead provided under policies issued by other insurers. *See Gov't Emps. Ins. Co. v. New S. Ins. Co.*, 119 N.C. App. 700, 704, 459 S.E.2d 817, 819, *disc. review denied*, 341 N.C. 648, 462 S.E.2d 510 (1995). No such controversy exists, however, in a declaratory judgment action to determine whether coverage is provided under an excess insurance policy where the underlying liability action has not yet been resolved. *See N.C. Farm Bureau Mut. Ins. Co. v. Warren*, 89 N.C. App. 148, 150, 365 S.E.2d 216, 217-18, *disc. review denied*, 322 N.C. 481, 370 S.E.2d 226 (1988), *appeal after remand*, 94 N.C. App. 591, 380 S.E.2d 790 (1989).

When more than one insurance policy affords coverage for a loss, the "other insurance" clauses in the competing policies must be examined to determine which policy provides primary coverage and which policy provides excess coverage. *Hlasnick v. Federated Mut. Ins. Co.*, 136 N.C. App. 320, 328, 524 S.E.2d 386, 391, *aff'd in part and disc. review improvidently allowed in part*, 353 N.C. 240, 539 S.E.2d 274 (2000). An excess clause is a type of "other insurance" clause which "generally provides that if other valid and collectible insurance covers the occurrence in question, the 'excess' policy will provide coverage only for liability above the maximum coverage of the

primary policy or policies." *Horace Mann Ins. Co. v. Cont'l Cas. Co.*, 54 N.C. App. 551, 555, 284 S.E.2d 211, 213 (1981) (internal quotation marks omitted). An excess clause is distinguishable from a pro rata "other insurance" clause. *See Fid. & Cas. Co. of N.Y. v. N.C. Farm Bureau Mut. Ins. Co.*, 16 N.C. App. 194, 203-04, 192 S.E.2d 113, 120-21 ("The terms 'prorate' and 'excess' do not have, and were not meant by the insurers to have identical meanings."), *cert. denied*, 282 N.C. 425, 192 S.E.2d 840 (1972). In *Fidelity & Casualty Co.*, this Court differentiated a pro rata clause in one policy from an excess clause in another policy:

> The Farm Bureau policy provides that if the injury or damage is covered by other applicable and collectible insurance, then Farm Bureau shall not be liable for a greater proportion of the loss than its limit of liability bears to the total applicable limits of liability of all valid and collectible insurance. The F and C policy, however, provides that its insurance coverage shall be excess to any other valid and collectible insurance with respect to loss arising out of the use of any non-owned automobile. The Farm Bureau provision is known as a "pro rata" clause; the F and C provision, an "excess" clause.

*Id.* at 203, 192 S.E.2d at 120-21.

Where a pro rata clause in one policy competes with an excess clause in another policy, the policy with the pro rata clause provides primary coverage, and the policy with the excess

clause provides secondary coverage which will only be triggered if the limits of the policy containing the pro rata clause are first exhausted. *See id.* at 204, 192 S.E.2d at 121. Furthermore, where a pro rata clause in one policy competes with a pro rata clause in another policy, each insurer has primary concurrent liability for a proportionate amount of the loss. *See* 44A Am. Jur. 2d *Insurance* § 1752 (2013). Accordingly, an actual controversy exists in a declaratory judgment action to determine the liability of an insurer under its policy where the policy contains a pro rata clause and the other applicable policy contains either an excess clause or a pro rata clause.

In general, there is no primary versus excess insurance policy relationship where a self-insurance program is at issue because self-insurance does not constitute other collectible insurance within the meaning of an insurance policy's "other insurance" clause. *Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 688–89, 443 S.E.2d 357, 360–61 (1994), *disc. review improvidently allowed per curiam*, 340 N.C. 353, 457 S.E.2d 300 (1995). Self-insurance is equivalent to a primary insurance policy, however, "when the self-insurance expressly provides that it is primary to other insurance." *Id.* at 689, 443 S.E.2d at 361. That is, while self-insurance generally is not a primary insurance policy, an exception exists

where the self-insurance states that it affords primary coverage. *Cf. id.* (concluding that insured's self-insurance was not the primary insurance policy where there was no evidence that the self-insurance stated it would be primary to the insured's other insurance).

In their Petition, UNC defendants rely on *Cone Mills Corp.* for the contention that the UNC-LITF is self-insurance and thus cannot be deemed a primary insurance policy. We note that this is the first time that UNC defendants have claimed that the UNC-LITF is self-insurance. On appeal, UNC defendants made no assertion that the UNC-LITF is self-insurance and failed to cite to a single case in which self-insurance was at issue; rather, UNC defendants likened the UNC-LITF to an excess insurance policy and relied on cases finding no actual controversy exists in a declaratory judgment action to determine coverage provided by an excess insurance policy.

The UNC-LITF is a self-insurance program for professional liability, authorized by N.C.G.S. § 116-219. However, the UNC-LITF, by its terms set forth in the UNC-LITF Memorandum of Coverage, falls under the exception carved out in *Cone Mills Corp.* and affords primary coverage. We find the plain language of the following "other insurance" clause in the UNC-LITF Memorandum of Coverage to be controlling:

ARTICLE VII.  OTHER INSURANCE

When this agreement and other collectible insurance both apply to a loss on the same basis, whether primary, excess or contingent, the Trust Fund shall not be liable under this agreement for a greater proportion of the loss than that stated in the applicable contribution provision below:

A.  Contribution by Equal Shares.  If all such other valid and collectible insurance provides for contribution by equal shares, the Trust Fund shall not be liable for a greater proportion of such loss than would be payable if each insurance company contributes an equal share until the share of each company equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid.  With respect to any amount of loss not so paid, the remaining companies shall continue to contribute equal shares of the remaining amount of the loss until each such company has paid its limit in full or the full amount of the loss is paid.

B.  Contribution by Limits.  If any of such other insurance does not provide for contribution by equal shares, the Trust Fund shall not be liable for a greater proportion of such loss than the applicable limit of liability under this agreement for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Nothing in this provision indicates that the UNC-LITF's liability arises only after the limits of other collectible insurance policies have been exhausted.  Rather, the provision provides that the UNC-LITF shares liability with other

collectible insurance according to their respective limits. Thus, the UNC-LITF "other insurance" clause is a pro rata clause. *See Fid. & Cas. Co.*, 16 N.C. App. at 203–04, 192 S.E.2d at 120–21.

While the UNC-LITF "other insurance" clause does not expressly provide that the UNC-LITF is primary to other insurance, the pro rata clause nonetheless means that the UNC-LITF provides primary coverage regardless of the terms of the MMIC policy.[2] Assuming, *arguendo*, that the MMIC policy contains an excess clause, then the UNC-LITF provides primary coverage. *See id.* at 204, 192 S.E.2d at 121. If, on the other hand, the MMIC policy contains a pro rata clause, then the UNC-LITF and MMIC share liability on a pro rata basis according to their respective limits and, for that reason, both the UNC-LITF and MMIC provide primary concurrent coverage. *See* 44A Am. Jur. 2d *Insurance* § 1752. Therefore, because the UNC-LITF affords primary coverage, an actual controversy exists as to the UNC-LITF's duty to indemnify, and the trial court erred by granting the stay based on its determination that no such

---

[2] Although the MMIC policy is not included in the record on appeal, a review of the policy is not necessary because the UNC-LITF "other insurance" clause is a pro rata clause. That is, regardless of whether the MMIC policy contains an excess clause or a pro rata clause, the UNC-LITF provides primary coverage.

controversy exists pending a final resolution in the underlying malpractice action.  The remaining arguments in UNC defendants' Petition are without merit and we decline to consider them further.

Reversed.

Judges ERVIN and McCULLOUGH concur.