DEBRA KAY LYLES v. THE CITY OF CHARLOTTE AND MOTOROLA, INC.

No. 439PA95

(Filed 8 November 1996)

### 1. Municipal Corporations § 443 (NCI4th)— city's participation in risk management program—no waiver of sovereign immunity

The City of Charlotte did not participate in a local government risk pool which waived its sovereign immunity for tort claims by its agreement with Mecklenburg County and the Charlotte-Mecklenburg Board of Education creating a Division of Insurance and Risk Management (DIRM) to handle liability claims against the three entities because the agreement did not require the pool to pay all claims for which a member incurs liability where each entity pays funds into separate trust accounts from which the DIRM pays claims against each entity; each entity must pay from its trust account the first $500,000 of any claim against it; if an entity does not have sufficient funds in the DIRM to pay a claim exceeding $500,000, the entity may use funds that another entity has in the DIRM to pay the amount in excess of $500,000; but this money must be repaid with interest. Another indication that the DIRM was not a local government risk pool was the failure of the entities to meet statutory requirements for giving notice to the Commissioner of Insurance, for creating boards of trustees and adopting operating procedures, and for maintaining claim reserves. Therefore, participation by defendant City of Charlotte in the DIRM did not waive its sovereign immunity in plaintiff's action to recover for the death of her police officer husband allegedly caused by the improper training he received from defendant regarding use of a portable radio to call for help.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 5-10, 37, 41, 138, 139.**

**Governmental or proprietary nature of function. 40 ALR2d 927.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

LYLES v. CITY OF CHARLOTTE

[344 N.C. 676 (1996)]

**Modern status of rule excusing governmental unit from tort liability on theory that only general, not particular, duty was owed under circumstances. 38 ALR4th 1194.**

2. **Municipal Corporations § 444 (NCI4th)— city's liability insurance—*Woodson* claim—no waiver of sovereign immunity**

Defendant city did not waive its sovereign immunity for plaintiff's *Woodson* claim for the death of her police officer husband by its purchase of liability insurance for accidental injury to city employees which excluded coverage for "bodily injury intentionally caused or aggravated by or at the direction of the Insured" because plaintiff's allegation that defendant city's action in instructing its officers how to use a portable radio was substantially certain to cause death or serious injury of an officer was an allegation that the occurrence was not accidental and removed the claim from coverage under the city's policy.

**Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 37-41.**

**Liability or indemnity insurance carried by governmental unit as affecting immunity from tort liability. 68 ALR2d 1437.**

Justice FRYE dissenting.

Chief Justice MITCHELL and Justice LAKE join in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 120 N.C. App. 96, 461 S.E.2d 347 (1995), affirming the denial of defendant City's motion for judgment on the pleadings or, in the alternative, motion for summary judgment by Gray, J., on 27 October 1993, in Superior Court, Mecklenburg County. Heard in the Supreme Court 8 April 1996.

The plaintiff, as duly appointed administratrix of the estate of Milus Terry Lyles, brought this action for the wrongful death of her husband. Defendant City of Charlotte filed a motion for judgment on the pleadings or, in the alternative, motion for summary judgment.

The papers filed in support of and in opposition to the motion tended to show the following. The plaintiff's intestate was killed while on duty as a Charlotte police officer. While the plaintiff's intes-

tate was transporting a prisoner in an automobile, the prisoner was able to get control of a pistol and shoot the plaintiff's intestate twice in the back. A bullet-proof vest kept the shots from entering the officer's back, but he lost control of the automobile. The officer left the vehicle and attempted to call for help on his portable radio as he had been instructed. The radio did not work, and the officer started towards his automobile to use the radio in the vehicle. He was then shot to death by the prisoner. The plaintiff alleged that the defendants had intentionally instructed her intestate to use the portable radio in a certain way, knowing that if used that way, the radio would not function and that there was a substantial certainty that this improper use would result in the death or serious injury of an officer.

The City of Charlotte had entered into an agreement with Mecklenburg County and the Charlotte-Mecklenburg Board of Education under the terms of which a Division of Insurance and Risk Management (DIRM) was created to handle liability claims asserted against the three entities. Each entity pays funds into separate trust accounts from which DIRM pays claims against each entity. The funds are not commingled. Each entity must pay from its trust account the first $500,000 of any claim against it. If an entity has a claim against it that exceeds $500,000 and that entity does not have sufficient funds in the DIRM to pay it, the entity may use funds that one of the other entities has in the DIRM in excess of $500,000. This money must be repaid with interest. The DIRM will not pay any claim in excess of $1,000,000.

The City also had in force at that time an insurance policy with General Reinsurance Corporation for claims by employees between $250,000 and $1,250,000. This policy paid for claims "because of bodily injury by accident or bodily injury by disease." It excluded coverage for "bodily injury intentionally caused or aggravated by or at the direction of the Insured."

The superior court denied the City's motion for judgment on the pleadings or, in the alternative, motion for summary judgment, and the Court of Appeals affirmed. We allowed the City's petition for discretionary review.

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr., G. Russell Kornegay, III, and Richard B. Fennell, for plaintiff-appellee.*

*Smith Helms Mulliss & Moore, by L.D. Simmons, II, and Leigh F. Moran, for defendant-appellant City of Charlotte.*

WEBB, Justice.

**[1]** The Court of Appeals based its decision on its holding that the City of Charlotte had waived its sovereign immunity by participating in a local government risk pool. N.C.G.S. § 160A-485 provides that a city may waive its sovereign immunity for civil liability in tort by purchasing liability insurance or by participating in a local government risk pool pursuant to article 23 of General Statutes chapter 58. N.C.G.S. § 58-23-5 provides in part:

> In addition to other authority granted pursuant to Chapters 153A and 160A of the General Statutes, two or more local governments may enter into contracts or agreements pursuant to this Article for the joint purchasing of insurance or to pool retention of their risks for property losses and liability claims and to provide for the payment of such losses of or claims made against any member of the pool on a cooperative or contract basis with one another . . . .

N.C.G.S. § 58-23-5 (1994). N.C.G.S. § 58-23-15 provides in part:

> A contract or agreement made pursuant to this Article must contain provisions:
>
> . . . .
>
> (3) Requiring the pool to pay all claims for which each member incurs liability during each member's period of membership, except where a member has individually retained the risk, where the risk is not covered, and except for amount of claims above the coverage provided by the pool.

N.C.G.S. § 58-23-15(3) (1994).

The plaintiff argues and the Court of Appeals held that because the City has the right, in certain circumstances, to use funds contributed by the other entities for the payment of claims, the entities had pooled retention of their risks for liability claims and provided for the payment of such claims made against any member of the pool on a cooperative or contract basis. This, says the plaintiff, makes the agreement a local government risk pool within the meaning of N.C.G.S. § 58-23-5. The plaintiff says it does not matter that the City must repay funds it has drawn from another entity. The plaintiff contends this does not keep the agreement from providing for the payment of claims made against a member on a cooperative or contract

basis with one another, which is the essence of a local government risk pool. We disagree.

In determining whether the City has joined a local government risk pool, we look first at N.C.G.S. § 58-23-1, which defines "local government." Only counties, cities, and housing authorities are defined as local governments for purposes of joining a local government risk pool. The Charlotte-Mecklenburg Board of Education could not join a risk pool pursuant to this statute. We need not determine the effect this would have on the agreement because we do not believe the agreement in any event constitutes a local government risk pool.

In *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 420 S.E.2d 432 (1992), we held that the City of Winston-Salem did not enter a local government risk pool when it organized a corporation to handle claims against it. We held that two or more local governments must join to create a local government risk pool. There are no other cases interpreting the statute as to what constitutes a local government risk pool.

As we read the statute, there must be more risk-sharing than is contained in the City's agreement in order to create a local government risk pool. N.C.G.S. § 58-23-15 provides that a local government risk pool agreement must contain a provision that the pool pay all claims for which a member incurs liability. We do not believe the pool has paid a claim if it is reimbursed for it.

N.C.G.S. § 58-23-5 provides that local governments may enter risk pools "to pool retention of their risks for . . . liability claims." As we read this language, the risks of the parties must be put in one pool for the payment of claims in order to have a local government risk pool. This was not done in this case.

Article 23 of General Statutes chapter 58 provides for the creation of local government risk pools. There are statutory requirements for organizing such a pool. The parties must give the Commissioner of Insurance thirty days' notice before organizing the pool. N.C.G.S. § 58-23-5. There are detailed requirements for creating boards of trustees and for adopting procedures for operating the pools. N.C.G.S. § 58-23-10 (1994). There are requirements for maintaining claim reserves. There is nothing in the record to show that any of these requirements have been met. While it may not by itself be determinative, the fact that the City has not complied with the statutory

requirements in creating a local government risk pool should be given some weight.

The question as to whether the creation of the DIRM was *ultra vires* for the City was not raised by the parties and we do not address it. The dissent raises the question and in order to prevent holding that the DIRM is *ultra vires* determines it is a local government risk pool. The General Assembly has provided that sovereign immunity may be waived by participating in a local government risk pool, and has provided for certain requirements to establish such an organization. We believe it would be a mistake to hold that a local government may ignore these statutory requirements and create a risk pool to its own liking. The City did not intend to join a local government risk pool, and we do not believe we should hold it has done so by accident.

We hold that the City of Charlotte has not joined a local government risk pool.

[2] The plaintiff also argues that the City, by the purchase of the General Reinsurance policy, has waived its sovereign immunity for the amount of each claim in excess of $250,000 but for not more than $1,250,000. This policy covers claims for bodily injury of City employees by accident and excludes coverage for "bodily injury intentionally caused or aggravated by or at the direction of the Insured."

The plaintiff brought this action as a *Woodson* claim, alleging that the defendant knew or should have known that its action in instructing its officers how to use the radios was substantially certain to cause the death or serious injury of an officer. *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). We presume this was done so that the workers' compensation claim would not be plaintiff's exclusive remedy. We do not pass on the question of whether the papers filed in this case show that the evidence would support a *Woodson* claim. The parties have not raised that question, and on this appeal, we shall assume the plaintiff has a *Woodson* claim.

The defendant says that by bringing an action based on the allegation that the City knew its action was substantially certain to cause death or serious injury, the plaintiff has alleged a claim that is not covered by the General Reinsurance policy. It says the policy covers accidents and excludes injuries intentionally caused. The plaintiff says the death of her husband was accidental and was not caused intentionally.

**LYLES v. CITY OF CHARLOTTE**

[344 N.C. 676 (1996)]

In this argument, defendant City must prevail. In *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 709, 412 S.E.2d 318, 325 (1992), we held that an intentional act is an accident within the meaning of a homeowner's insurance policy if the injury incurred was not intended or substantially certain to be the result of the intentional act. We are bound by *Stox* to hold that when the plaintiff alleged the City's action was substantially certain to cause an injury, she alleged the occurrence was not accidental. This allegation removed the claim from coverage under the policy for purposes of this action.

In *Woodson*, we held that facts which may support a civil action because they show a substantial certainty of injury may also support a workers' compensation claim on the theory that the claim is based on an accident. We said that the language of the Workers' Compensation Act required this result. *Woodson v. Rowland*, 329 N.C. 330, 348, 407 S.E.2d 222, 233. The plaintiff in this case is not making a workers' compensation claim, and the provisions of the Workers' Compensation Act are not available to her in determining whether her claim is based on an accident.

For the reasons stated in this opinion, we reverse the Court of Appeals.

REVERSED AND REMANDED.

Justice FRYE dissenting.

I disagree with the majority's holding in this case. The issues in this case are: (1) whether the City of Charlotte has waived its governmental immunity by entering into a joint risk-management program with other units of local government, and (2) whether the liability insurance policy provides coverage for the City against a *Woodson* claim.

"[U]nder the common law, a municipality is immune from liability for the torts of its officers committed while they were performing a governmental function." *Wiggins v. City of Monroe*, 73 N.C. App. 44, 49-50, 326 S.E.2d 39, 43 (1985). However, N.C.G.S. § 160A-485(a) establishes an exception to the common law rule:

> Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance. Participation in a local government risk pool pursuant to Article 23 of General Statute Chapter 58 shall be deemed to be the purchase of insur-

LYLES v. CITY OF CHARLOTTE

[344 N.C. 676 (1996)]

ance for the purposes of this section. Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability. No formal action other than the purchase of liability insurance shall be required to waive tort immunity, and no city shall be deemed to have waived its tort immunity by any action other than the purchase of liability insurance.

Additionally, N.C.G.S. § 58-23-5 provides:

In addition to other authority granted pursuant to Chapters 153A and 160A of the General Statutes, two or more local governments may enter into contracts or agreements pursuant to this Article for the joint purchasing of insurance or to pool retention of their risks for property losses and liability claims and to provide for the payment of such losses of or claims made against any member of the pool on a cooperative or contract basis with one another, or may enter into a trust agreement to carry out the provisions of this Article. In addition to other authority granted pursuant to Chapters 153A and 160A of the General Statutes, two or more local governments may enter into contracts or agreements pursuant to this Article to establish a separate workers' compensation pool to provide for the payment of workers' compensation claims pursuant to Chapter 97 of the General Statutes or to establish pools providing for life or accident and health insurance for their employees on a cooperative or contract basis with one another; or may enter into a trust agreement to carry out the provisions of this Article. A workers' compensation pool established pursuant to this Article may only provide coverage for workers' compensation, employers' liability, and occupational disease claims. Such local governments shall give the Commissioner 30 days' advance written notification, in a form prescribed by the Commissioner, that they intend to organize and operate risk pools pursuant to this Article.

Thus, a city may waive immunity in its governmental capacity through the purchase of liability insurance or by joining a local government risk pool. N.C.G.S. § 160A-485(a) (1994); *Combs v. Town of Belhaven*, 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992) (addressing purchase of insurance). However, a city generally retains immunity from civil liability in its governmental capacity to the extent it does not purchase liability insurance or participate in a local government risk pool pursuant to article 23 of chapter 58 of the General Statutes. N.C.G.S. § 160A-485; *see also Wall v. City of Raleigh*, 121 N.C. App.

351, 354, 465 S.E.2d 551, 553 (1996); *Jones v. Kearns*, 120 N.C. App. 301, 302, 462 S.E.2d 245, 246, *disc. rev. denied*, 342 N.C. 414, 465 S.E.2d 541 (1995).

In the instant case, clearly, the City of Charlotte is a local government within the meaning of N.C.G.S. § 58-23-1, which defines "local government" as "any county, city, or housing authority located in this State." Thus, the City may waive its governmental immunity by purchasing liability insurance or by participating in a government risk pool. Otherwise, the City has no "risk" to protect itself against since the City is immune from suit in tort.

. The City of Charlotte has purchased liability insurance for accidental injury to City employees, but contends that the claim asserted in the instant action is not covered by its liability insurance because of a specific exclusion in the policy. Although it has entered into an elaborate risk-management program with the County and the School Board, the City of Charlotte contends that it is not participating in a local government risk pool so as to waive governmental immunity. I believe that the City has waived its governmental immunity, both by the purchase of liability insurance and by entering a risk-management program which should be deemed a local government risk pool.

The problem with allowing local governments to enter into "joint undertaking" contracts, such as the one at issue in the instant case, is that it gives local governments the unbridled discretion to pay some claims and to assert governmental immunity as to those claims that it does not wish to pay. Under such a scheme, the decision of the local government officials is not reviewable, and the awards to injured parties may be distributed on an arbitrary basis without any opportunity for the injured party to have the decision of the local government reviewed by the courts. *Even the State of North Carolina does not have such unbridled discretion.* Thus, I conclude that a municipal corporation may not benefit by participating with other local governments in a risk-management program which is tantamount to a statutory local government risk pool without losing its governmental immunity for claims covered by the risk-management program.

Article 23 of Chapter 58 of the North Carolina General Statutes is known as the Local Government Risk Pool Act. The Local Government Risk Pool Act provides in pertinent part:

In addition to other authority granted pursuant to Chapters 153A and 160A of the General Statutes, two or more local gov-

ernments may enter into contracts or agreements pursuant to this Article for the joint purchasing of insurance or to pool retention of their risks for property losses and liability claims and to provide for the payment of such losses of or claims made against any member of the pool on a cooperative or contract basis with one another, or may enter into a trust agreement to carry out the provisions of this Article. . . . Such local governments shall give the Commissioner 30 days' advance written notification, in a form prescribed by the Commissioner, that they intend to organize and operate risk pools pursuant to this Article.

N.C.G.S. § 58-23-5 (1994).

In *Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 420 S.E.2d 432 (1992), this Court examined a government risk-management program and concluded that it did not operate as a waiver of sovereign immunity. The City of Winston-Salem had organized a corporation named Risk Acceptance Management Corporation (RAMCO) to handle claims against the City of $1,000,000 or less. All officers and directors of RAMCO were employees of the City. RAMCO obtained part of its funds for operations by issuing tax exempt certificates with payment of the certificates guaranteed by the City. The City agreed to pay to RAMCO $600,000 annually and to reimburse RAMCO for operating expenses, borrowed funds, and all other costs. We held that because the City of Winston-Salem had not joined with any other local government unit in the operation of RAMCO, it was not participating in a statutory risk pool.

In *Blackwelder*, the parties, as did the members of this Court, assumed that a City had the authority to enter into such a government risk-management program. Therefore, we were not asked to consider whether such a program was *ultra vires*. However, in *Leete v. County of Warren*, 341 N.C. 116, 462 S.E.2d 476 (1995), this Court reaffirmed the principle that a municipality must have a legal obligation to make a payment in order to distribute governmental funds. Justice Orr, writing for the majority, quoted with approval *Brown v. Board of Comm'rs of Richmond Co.*, 223 N.C. 744, 746, 28 S.E.2d 104, 105-06 (1943):

"[T]he Legislature has no power to compel or even to authorize a municipal corporation to pay a gratuity to an individual to adjust a claim which the municipality is under no legal obligation to pay. Nor may it lawfully authorize a municipal corporation to pay gifts or gratuities out of public funds. . . . [A] municipality cannot law-

fully make an appropriation of public moneys except to meet a legal and enforceable claim . . . ."

*Id.* at 120, 462 S.E.2d at 479. A municipality has a legal obligation to pay a legitimate claim when it has waived sovereign immunity. On the other hand, to the extent a municipality retains its sovereign immunity, it has no authority to pay the claim against it.

"It is a well-established principle that municipalities, as creatures of the State, can exercise only that power which the legislature has conferred upon them." *Bowers v. City of High Point*, 339 N.C. 413, 417, 451 S.E.2d 284, 287 (1994). By what authority does the City of Charlotte negotiate, settle, and pay tort claims against it under the risk-management program? I find no statutory authority to pay such claims unless the City has waived its governmental immunity, either by the purchase of liability insurance or by participation in a local government risk pool. The City cannot have it both ways. Either it has waived governmental immunity by entering into this risk-management program, or its payment of government funds to settle tort claims to which governmental immunity applies would appear to be *ultra vires*. I presume that the City acted pursuant to article 20 of chapter 160A of the North Carolina General Statutes as recited in the agreement establishing the risk-management program, meaning its actions are not *ultra vires*. Therefore, I would deem the participation in the risk-management program to be participation in a local government risk pool, thereby waiving governmental immunity. Accordingly, I would affirm the decision of the Court of Appeals which affirmed the trial court as to this issue.

I now consider whether the City has waived governmental immunity for plaintiff's *Woodson* claim by the purchase of liability insurance. To the extent that the plaintiff's *Woodson* claim falls under the coverage provisions of the City's liability policy, the City has waived its governmental immunity. N.C.G.S. § 160A-485; *see also Wall*, 121 N.C. App. at 354, 465 S.E.2d at 553; *Jones*, 120 N.C. App. at 302, 462 S.E.2d at 246. Relying on this Court's decision in *N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 412 S.E.2d 318 (1992), the majority holds that plaintiff's allegation that the City's action was substantially certain to cause injury removed the claim from coverage under the policy for purposes of this action. I do not believe that *Stox* requires this result.

First, *Stox* does not involve a *Woodson* claim. In fact, I have found no case from this Court discussing the applicability of liability cover-

age for a *Woodson* claim. To the extent applicable, however, I believe that *Stox* would suggest that the policy in this case would cover most *Woodson* claims. As Justice (now Chief Justice) Mitchell wrote for a unanimous Court in *Stox*:

> The primary issue to be resolved in this appeal is whether liability for personal injuries suffered by the defendant Louise Hooks Stox, which occurred when she fell as the result of a push by the defendant Gordon Owens, is covered by a policy of homeowners liability insurance issued to Owens by Farm Bureau. We conclude that under the language of the policy in question, coverage is provided.

Id. at 699, 412 S.E.2d at 320.

The exclusion at issue in the instant case is for "bodily injury intentionally caused or aggravated by or at the direction of the insured." In *Stox*, the exclusion was for "bodily injury . . . which is expected or intended by the insured." In that case, we considered whether the policy's exclusion placed Owens' liability for injury to Stox outside the coverage of the policy. We said:

> The trial court found from competent evidence before it that, although Gordon Owens intentionally pushed Louise Stox, he had no specific intent to cause her injury. Thus, the injuries she sustained were "the unintended result of an intentional act." These findings supported the trial court's conclusion that "the 'expected or intended injury' exclusion contained in the policy is inapplicable."

*Id.* at 703, 412 S.E.2d at 322. In *Stox*, the Court of Appeals relied upon *Commercial Union Ins. Co. v. Mauldin*, 62 N.C. App. 461, 303 S.E.2d 214 (1983), in holding that the exclusion applied. In *Commercial Union*, the Court of Appeals properly held that a person's actions in shooting into an occupied automobile were excluded from coverage under his homeowner's policy by the "expected or intended injury" exclusion. This Court distinguished *Commercial Union* as follows: "Under the rules of construction which govern this exclusionary provision in the Farm Bureau homeowners policy, we disagree with the Court of Appeals and conclude that it is the resulting injury, not merely the volitional act, which must be intended for this exclusion to apply." 330 N.C. at 703-04, 412 S.E.2d at 322. Firing a pistol into an occupied vehicle and pushing an individual are both intentional acts,

but the former, and not the latter, is excludable under the home-owner's policy.

Returning to the instant case, the policy excludes from coverage "bodily injury intentionally caused or aggravated by or at the direction of the insured." Construing this provision narrowly, as we must, it does not apply to this case. There is no allegation in the complaint, or in the summary judgment materials before this Court, which indicates that plaintiff believes or contends that the police department did anything with the intent to injure or to kill Mr. Lyles or anyone else. Nor is such an intent required in order to state a *Woodson* claim. As we said in *Woodson*:

> Thus, both courts and legislatures in a fair number of other jurisdictions have rejected the proposition that actual intent to harm is required for an employer's conduct to be actionable in tort and not protected by the exclusivity provisions of workers' compensation. Our adoption of the substantial certainty standard does the same.

*Woodson v. Rowland,* 329 N.C. 330, 344, 407 S.E.2d 222, 230 (1991).

The complaint in *Woodson* stated a claim against Rowland, not because Rowland intended to injure Woodson by requiring him to remain in the dangerous trench, but because Rowland insisted on Woodson's continuing to work in the trench notwithstanding the substantial likelihood of injury. As we said in our *per curiam* reversal of the Court of Appeals in *Owens v. W.K. Deal Printing, Inc.,* 339 N.C. 603, 453 S.E.2d 160 (1995):

> We reemphasize that plaintiffs in *Woodson* actions need only establish that the employer intentionally engaged in misconduct and that the employer knew that such misconduct was "substantially certain" to cause serious injury or death and, thus, the conduct was "so egregious as to be tantamount to an intentional tort." *Pendergrass v. Card Care, Inc.,* 333 N.C. 233, 239, 424 S.E.2d 391, 395 (1993).

339 N.C. at 604, 453 S.E.2d at 161. There may be a fine line between intentional torts and conduct "so egregious as to be tantamount to an intentional tort," but it is a line that this Court has drawn. This line is emphasized by our continued disavowal of the "bomb throwing" language used in certain opinions of the Court of Appeals.

In summary, I disagree with the majority's conclusion that this wrongful death claim falls under the exclusionary provisions of the policy. For purposes of plaintiff's claim against the City, Officer Lyles' injuries resulted from an accident within the coverage section of the liability policy, and were not "intentionally caused or aggravated by or at the direction of the insured" within the meaning of the policy exclusion. Accordingly, I would hold that the liability insurance policy purchased by the City in the instant case covers the plaintiff's *Woodson* claim, if a *Woodson* claim is properly alleged and proved.

For the foregoing reasons, I respectfully dissent from the decision of the majority of this Court.

Chief Justice MITCHELL and Justice LAKE join in this dissenting opinion.