MICHAEL EDWARD KEPHART, BY HIS GUARDIAN AD LITEM, DOLLY TUTWILER, PLAINTIFFS V. JAMES PENDERGRAPH, SHERIFF OF MECKLENBURG COUNTY, THE COUNTY OF MECKLENBURG, AND PEERLESS INSURANCE CO., DEFENDANTS

No. COA97-823

(Filed 15 December 1998)

**1. Appeal and Error— appealability—denial of summary judgment—governmental immunity**

An appeal of the denial of summary judgment on governmental immunity was interlocutory but immediately appealable.

**2. Immunity— governmental—county confinement facilities**

The maintenance of confinement facilities within the context of law enforcement services by a county and its officials is within the rubric of governmental functions for governmental immunity.

**3. Immunity— governmental—waiver—self-funded loss program**

Mecklenburg County's Self-Funded Loss Program did not constitute either insurance or a local government risk pool waiving governmental immunity. A self-funded program has been held not to comprise insurance under N.C.G.S. § 153A-435 and a local government risk pool requires participation of two or more members.

**4. Immunity— governmental—waiver—self-funded loss program—insurance coverage above retention—summary judgment**

The trial court did not err in a negligence action brought by the family of a prisoner permanently disabled in a suicide attempt by denying defendants' motion for summary judgment based on sovereign immunity where Mecklenburg County had a Self-Funded Loss Program and an insurance policy with a self-insured loss retention (SIR) of $100,000. Sovereign immunity is waived to the extent of insurance coverage and, although the Self-Funded Program did not waive sovereign immunity and defendants contended that the policy did not provide coverage until the SIR had been exhausted, the coverage of the policy by its terms depends on the amount of damages and it cannot be said that plaintiffs would fail to obtain an award greater than the amount of self-insurance less claim expenses.

KEPHART v. PENDERGRAPH

[131 N.C. App. 559 (1998)]

Appeal by defendants from order filed 20 March 1997 by Judge Ronald K. Payne in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 February 1998.

*McNeely, Hefferon and Hefferon, by Paul Hefferon and Thomas J. Hefferon, for plaintiffs-appellees.*

*Womble Carlyle Sandridge & Rice, by G. Michael Barnhill and W. Clark Goodman, for defendants-appellants.*

JOHN, Judge.

Defendants appeal the trial court's denial of their motion for summary judgment grounded exclusively upon the defense of sovereign immunity. For the reasons set forth herein, we affirm the order of the trial court.

Detailed exposition of the factual background is unnecessary to determination of this appeal. In brief, plaintiff Michael Edward Kephart was arrested 17 April 1995 for violation of probation and taken to the Mecklenburg County Intake Center (the Center). The Center is the initial processing facility for the Mecklenburg County Jail (the Jail). During a prior incarceration at the Jail, plaintiff had attempted suicide and been diagnosed as depressed and suicidal.

After being processed at the Center following his arrest, plaintiff was placed in a holding cell fully dressed and unmonitored. Plaintiff attempted to commit suicide by hanging himself from a ceiling grate by his necktie. He was discovered approximately ten minutes later, having suffered a severe anoxic brain injury. As a result, plaintiff is permanently disabled and will require lifetime medical, nursing and custodial treatment and supervision.

At the time of the foregoing incident, defendant Mecklenburg County (the County) had in place a Self-Funded Loss Program (the Program) and was covered by a Genesis Insurance Company insurance policy (the Policy). Effective 1 July 1993, the County and the Division of Insurance and Risk Management (DIRM) of the City of Charlotte Finance Department entered into an Administration Agreement which established and implemented the Program. The County delegated to DIRM the necessary authority to provide certain risk management services on behalf of the County in conjunction with the Program.

Contained within the Program was a provision that

[t]he establishment of this Program shall not be deemed to be a waiver of immunity through the purchase of insurance within the meaning of N.C. Gen. Stat. § 153A-435 . . . or the waiver of any defense or rule of governmental or sovereign immunity available to County or to a Member with respect to any Claim asserted against County or a Member. The establishment of this Program shall not constitute the establishment of a Local Government Risk Pool within the meaning of N.C. Gen. Stat. § 58-23-1 et seq.

The Policy, a commercial general liability coverage policy, included the following conditions:

**4. Other Insurance.**

. . . .

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. . . .

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

. . . .

The Policy was further modified by a self-insured retention (SIR) endorsement to the effect that:

Our obligation is to indemnify the insured for damages to which this insurance applies that the insured becomes legally obligated to pay and that exceed the self-insured retention amount(s) . . . up to but not more than the amounts set forth as Limits of Insurance . . . . The insured may make claim for indemnity under this policy as soon as it is determined that damages exceed the self-insured retention amounts . . . . The insured's obligation to pay shall have been determined by judgment against the insured after actual trial or by written agreement of the insured, the claimant and us.

For liability arising out of law enforcement activity, the amount of the County's self-insured retention (SIR) was $100,000.00 paid through the Program, and the Policy limit was $2,900,000.00. A law enforcement liability endorsement further modified the SIR endorsement of the Policy by providing indemnification "when damages together with 'claim expenses' exceed the Self Insured Retention."

On 1 November 1995, plaintiff, through his mother acting as guardian *ad litem*, filed the instant action, alleging his injuries were proximately caused by the negligence of defendants. Defendants responded with an "Answer and Motion to Dismiss," asserting, *inter alia*, the defense of sovereign immunity. On 27 January 1997, defendants moved for summary judgment pursuant to N.C.G.S. § 1A-1, Rule 56 (1990). The motion was not directed at "the underlying merits of the matter," but was confined to the issue of sovereign immunity. Defendants' motion was denied 20 March 1997, and notice of appeal was thereafter timely filed.

**[1]** Preliminarily, we note that although defendants' appeal of the trial court's order denying summary judgment is interlocutory, this Court has

held that orders denying dispositive motions grounded on the defense of governmental immunity are immediately reviewable as affecting a substantial right.

*Hedrick v. Rains*, 121 N.C. App. 466, 468, 466 S.E.2d 281, 283 (1996). Defendants' appeal is thus properly before us to the extent it is based upon the defense of governmental immunity. We do not address, either expressly or impliedly, any other issue.

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. N.C.R. Civ. P. 56; *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). The burden is on the movant to show:

(1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim.

*Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996).

Governmental immunity shields municipalities and the officers or employees thereof sued in their official capacities from suits based on torts committed while performing a governmental function. *Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993), *cert. denied*, 336 N.C. 77, 445 S.E.2d 46 (1994).

It is . . . well-settled that when an action is brought against individual officers in their official capacities the action is one against the state for the purposes of applying the doctrine of sovereign immunity.

*Whitaker v. Clark*, 109 N.C. App. 379, 381-82, 427 S.E.2d 142, 143-44, *cert. denied*, 333 N.C. 795, 431 S.E.2d 31 (1993).

**[2]** The provision of police services, *Coleman v. Cooper*, 89 N.C. App. 188, 192, 366 S.E.2d 2, 5, *disc. review denied*, 322 N.C. 834, 371 S.E.2d 275 (1988), and the erection and operation of prisons and jails, *Pharr v. Garibaldi*, 252 N.C. 803, 810, 115 S.E.2d 18, 22 (1960), have previously been determined to constitute governmental functions. We conclude the actions of a county and its officials in maintaining confinement facilities within the context of law enforcement services are likewise encompassed within the rubric of governmental functions.

**[3]** A county may waive governmental immunity for torts committed while performing a governmental function by the purchase of liability insurance. N.C.G.S. § 153A-435(a) (1991) provides in pertinent part:

[a] county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment . . . .

Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function. Participation in a local government risk pool pursuant to Article 39 of General Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this section.

However, a governmental entity

generally retains immunity from civil liability in its governmental capacity to the extent it does not purchase liability insurance or

participate in a local government risk pool pursuant to article 23 of chapter 58 of the General Statutes.

*Lyles v. City of Charlotte*, 344 N.C. 676, 683, 477 S.E.2d 150, 155 (1996) (Frye, J., dissenting); *see also Dickens v. Thorne*, 110 N.C. App. 39, 43, 429 S.E.2d 176, 179 (1993) (governmental immunity retained for causes of action excluded by insurance policy).

Defendants contend the Program constitutes neither insurance nor a local government risk pool within the meaning of G.S. § 153A-435. In accordance with decisions of our Supreme Court, we conclude this assertion has merit.

A self-funded loss program has been held not to comprise insurance under G.S. § 153A-435. *See Blackwelder v. City of Winston-Salem*, 332 N.C. 319, 322-23, 420 S.E.2d 432, 434-35 (1992) (defendant-city's formation of corporation denominated "Risk Acceptance Management Corporation" to handle claims against city of $1,000,000.00 or less not insurance contract waiving sovereign immunity). Accordingly, the Program does not constitute insurance under the statute for purposes of waiving governmental immunity.

Moreover, a local government risk pool has been determined to require, by definition, participation of two or more members joining together to share risk. *See Lyles*, 344 N.C. at 680, 477 S.E.2d at 153; *see also* N.C.G.S. § 58-23-5 (1994) (setting forth requirements of local government risk pools). The County herein is the sole entity retaining risks and funds under the Program, and the Program thus is not a local government risk pool as contemplated by G.S. § 153A-435.

[4] The ultimate issue herein, therefore, is whether the Policy provides liability coverage for plaintiffs' claims, thereby effecting a waiver of sovereign immunity by defendants. The construction and application of insurance policies to undisputed facts is a question of law for the court. *Cone Mills Corp. v. Allstate Ins. Co.*, 114 N.C. App. 684, 686, 443 S.E.2d 357, 359 (1994). If policy language is clear and unambiguous, the court's sole duty is to "determine the legal effect of the language used and to enforce the agreement as written." *Id.* at 687, 443 S.E.2d at 359. Any ambiguity in the meaning of a particular provision is to be resolved in favor of the insured and against the insurance company. *Maddox v. Insurance Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981). "Exclusions from and exceptions to undertakings by the company are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the

policy." *Id.* The various clauses are to be harmoniously construed, if possible, and every provision given effect. However, if provisions conflict, "the provision favorable to the insured should be held controlling." *Drye v. Nationwide Mut. Ins. Co.*, 126 N.C. App. 811, 814, 487 S.E.2d 148, 150, *disc. review denied*, 347 N.C. 265, 493 S.E.2d 451 (1997).

Defendants first maintain the Policy provides coverage only in excess of the SIR and does not attach until the SIR is exhausted. Defendants cannot be forced to exhaust the SIR through claim expenses, they continue, and summary judgment therefore should have been allowed because no insurance covers plaintiffs' claims and sovereign immunity remains intact.

As support for their contention that the Policy is an excess policy, "bear[ing] typical characteristics of excess coverage," defendants point to a recent analysis:

> Most excess liability insurance contracts are "indemnity" contracts as opposed to "direct pay" contracts. In other words, under most excess contracts the insurer promises to "indemnify" or "reimburse" an insured for sums paid by the insured in excess of the underlying coverage. Generally, indemnity contracts require that the insured's liability be fixed by a judgment against it or by a settlement agreement with the consent of the insured, the insurer and the claimant . . . . In contrast, direct pay contracts obligate the insurer "to pay on behalf of" the insured . . . .

> In contrast to the primary insurer, the excess insurer rarely undertakes to defend the insured . . . . Although excess insurance contracts ordinarily do not contain a duty to defend, most excess insurance contracts provide that the excess insurer has the "option" to participate or the right to "associate" in the defense of lawsuits pending against the Insured.

Scott M. Seaman and Charlene Kittredge, *Excess Liability Insurance: Law and Litigation*, 32 Tort & Insurance Law Journal 653, 656, 662-663 (1997).

Reasoning that the Policy "follows these tendencies," defendants argue "[i]t is well-established that excess coverage does not attach unless and until all underlying coverages have been exhausted." It follows, defendants continue, that the Policy

only indemnifies the County after the County has become legally obligated to exhaust its SIR. Because the County has retained sovereign immunity up to the SIR limit from state tort law claims such as those in this case, it cannot become legally obligated to exhaust the SIR on those claims. The excess coverage of the Genesis policy therefore never attaches to such claims.

Defendants conclude that the Program, in effect the "underlying coverage," *see id.,* in the instant case, cannot be exhausted because of sovereign immunity, and the Policy thus would in no event afford coverage for plaintiffs' claims. As defendants' counsel asserted to the trial court, the Policy attaches only

> once the County is legally obligated to pay the self-insured retention or legally obligated to pay an amount in excess of the self-insured retention. And because the County can't be legally obligated to pay that self-insured retention because of its sovereign immunity, there is no waiver.

In short, defendants' argument at bottom is basically circular, claiming defendants can never be liable on the SIR because of sovereign immunity and that the Policy does not apply until the SIR is exhausted. Plaintiffs aptly respond that the Policy contains no exhaustion requirement and that the word "exhaustion," typical of excess policies, never appears in the Policy.

Defendants retort that their position is not flawed since there are claims to which the Policy would apply which would not be precluded by sovereign immunity, such as civil rights claims. *See, e.g., Corum v. University of North Carolina,* 330 N.C. 761, 785-86, 413 S.E.2d 276, 291-92 (defense of sovereign immunity does not apply to state constitutional claims), *cert. denied,* 506 U.S. 985, 121 L. Ed. 2d 431 (1992). According to defendants, this was precisely the purpose of the Policy. However, as plaintiffs wryly note, "[i]t is hard to imagine that this amount of premium [$354,357.00] was only intended to insure the risk that defendants might be held liable for civil rights violations." Certainly defendants could achieve the claimed limited coverage by selecting an insurance policy with carefully considered exclusions. *See White v. Mote,* 270 N.C. 544, 556, 155 S.E.2d 75, 83 (1967) ("had it been the intent of the insurer to escape liability . . . the excluded description or use could have and should have been written into the policy").

Perhaps more significantly, defendants fail to address the provision of the Policy declaring its coverage "is primary except when"

certain exceptions apply. The listed exceptions are inapplicable to the facts *sub judice*. Moreover, the SIR endorsement itself provides that it modifies "*SECTION I*—COVERAGES A and B" (emphasis added) of the Policy, and the declaration that the Policy is "primary" is found in *SECTION IV*. Bearing in mind the general rule that in the event of conflicting policy provisions, that favorable to the insured should control, *see Drye*, 126 N.C. App. at 814, 487 S.E.2d at 150, therefore, we believe characterizing the Policy as "primary" or "excess" is not as facile a task as defendants contend.

In addition, plaintiffs interject that whether or not the Genesis Policy provides primary or excess coverage is irrelevant. According to plaintiffs, the plain language of G.S. § 153A-435(a) predicates waiver of sovereign immunity upon *purchase* of insurance. *See* G.S. § 153A-435(a) ("[p]urchase of insurance . . . waives the county's governmental immunity"). In the words of plaintiffs,

[t[he statute does not say that the waiver occurs upon any other condition, such as attachment of liability of the insurance company, exhaustion of a self insured retention, entry of judgment, or the determination of a legal obligation to pay by either the county or its insurer.

Plaintiffs' reading of G.S. § 153A-435 appears too broad. Although the statute does not correlate exhaustion of a self-insured retention with waiver of sovereign immunity, it does provide that waiver occurs only to the extent of insurance coverage. G.S. § 153A-435(b) ("[t]o the extent of the coverage of insurance purchase . . . governmental immunity may not be a defense").

Nonetheless, plaintiffs properly point out that our case law has consistently considered purchase of limited insurance coverage by a governmental entity to constitute partial waiver of sovereign immunity. *See, e.g., Jones v. Kearns*, 120 N.C. App. 301, 303, 462 S.E.2d 245, 246, *disc. review denied*, 342 N.C. 414, 465 S.E.2d 541 (1995) ("[b]ecause immunity from suit for damages of $250,000.00 or less had not been waived at the time of the alleged incident, the City is entitled to partial summary judgment in its governmental capacity for damages of $250,000.00 or less"); *Wilhelm v. City of Fayetteville*, 121 N.C. App. 87, 464 S.E.2d 299 (1995) (no waiver of governmental immunity by city in being self-insured for claims up to $250,000.00, but immunity waived for amounts in excess thereof because of purchase of liability insurance policies covering such amounts).

Defendants respond by reiterating they cannot be forced to exhaust the SIR through claim expenses. Thus, defendants assert, as the County cannot be legally obligated to pay its SIR because of sovereign immunity, the "obligation to indemnify" never arises since the Policy only "applies . . .[when] the insured becomes legally obligated to pay" by a judgment against insured in excess of the SIR. Furthermore, defendants continue, since "[s]overeign immunity serves to protect public officials and governmental entities not only from liability, but also from the burdens of defending claims," it would be "antithetical to the basic principal of sovereign immunity" to hold otherwise. We do not agree.

First, defendants offer no authority directly in support of the foregoing argument. See N.C.R. App. P. 28(b)(5) ("body of the argument shall contain citations of the authorities upon which the appellant relies"; assignments of error "in support of which no . . . authority [is] cited, will be taken as abandoned").

Defendants also fail to account convincingly for the language of G.S. § 153A-435(a) which states that the "[p]urchase of insurance . . . waives the county's governmental immunity, to the extent of insurance coverage." The County thus is not cloaked with immunity for claims when coverage is provided under the Genesis Policy—coverage being the antecedent to waiver of sovereign immunity. As previously indicated, the Policy provides coverage for damages in excess of $100,000.00 and less than $2,900,000.00, and likewise provides indemnification when "damages together with 'claim expenses' exceed the Self Insured Retention."

We note that both counsel for plaintiffs and for defendants at the hearing below responded in the affirmative to the following question of the trial court:

> . . . what you're telling me is the self-insured retention, or retained risk, applies to all costs incurred in the proceedings so that once $100,000 is accrued or incurred for either lawyers, depositions, etcetera, that it then becomes, assuming there's coverage, there becomes insurance available, is that right?

Counsel for defendants responded, "Yes, sir, that's correct, under the law enforcement endorsement."

Significantly, the law enforcement endorsement does not require that the SIR amount have been *paid out* as a prerequisite to insurance coverage. As the trial court stated and defense counsel agreed:

. . . . Your policy says when the damages exceed the self-insured retention amount. It doesn't say and when the insured has paid the self-insured retention amount, does it? It says when they exceed. It says they can make a claim to you for indemnity once it's determined that the amount of damages exceed the $100,000 . . . .

The purport of the provision in G.S. § 153A-435(a) that purchase of insurance waives governmental immunity is that the Policy herein itself determines the County's obligation to pay by providing coverage and waiving sovereign immunity, see G.S. § 153A-435(a), again "when damages together with 'claim expenses' exceed the Self Insured Retention." Thus, regardless of whether the County is required to pay out SIR funds, coverage is provided after a claim exceeds $100,000.00, taking into account claim expenses.

Our reading of the Policy is consistent with this Court's previous holding that "evidence of self-insurance . . . serves only to mitigate the amount of damages defendant may incur." Wilhelm, 121 N.C. App. at 90, 464 S.E.2d at 301. In Wilhelm, this Court vacated summary judgment entered in favor of defendant because the amount of damages is "a question of material fact for the jury, and it cannot be said that plaintiff[s] would fail to obtain an award greater than [the amount of self-insurance] as a matter of law." Id.

Citing Wilhelm and G.S. § 153A-435, defendants assert as a final argument that

[r]egardless of whether the Genesis policy could be construed broadly as a waiver of immunity, it is clear from the limits of liability that there is no coverage for damages below $100,000 or in excess of $2,900,000.

Therefore, defendants maintain,

[e]ven if the Superior Court's denial of summary judgment on the basis of sovereign immunity is affirmed, its denial of partial summary judgment for all claims less than $100,000 or in excess of $2,900,000 should therefore be reversed.

Defendant's concluding argument is unfounded.

Following the reasoning of Wilhelm, we do not believe it can be said as a matter of law at this point that the Policy may not provide coverage for some portion, or indeed the entire first $100,000.00, of plaintiffs' damages. Although defendants insist "[i]t is undisputed that

the SIR has not yet been exhausted by claims [sic] expenses," as the instant litigation proceeds attended by the inevitable accumulation of claim expenses, the SIR amount of $100,000.00 might indeed become "exhausted" by claim expenses. Such an event would thereby implicate the Policy provision affording indemnification "when damages *together with* 'claim expenses' exceed the Self Insured Retention" (emphasis added). Accordingly, defendants' argument to the contrary, partial summary judgment in their favor on plaintiffs' claims for damages of "less than $100,000" would likewise have been inappropriate. The trial court was confronted with a genuine issue of material fact as to whether some portion of the SIR up to $100,000.00 might become "exhausted" by "claim expenses," *see id.*; *see also Maddox*, 303 N.C. at 650, 280 S.E.2d at 908 (any ambiguity in meaning of policy provision to be resolved against insurance company), thereby implicating attachment of the indemnification provision of the Policy to the equivalent portion of plaintiff's yet-to-be-determined damages.

In sum, sovereign immunity is waived "to the extent of insurance coverage." *See* G.S. § 153A-435(a),(b). The coverage of the Policy herein is, by its terms, dependent upon the amount of damages awarded to plaintiffs. We thus "cannot [say] that plaintiff[s] would fail to obtain an award greater than [the amount of self-insurance less claim expenses] as a matter of law." *Wilhelm*, 121 N.C. App. at 90, 464 S.E.2d at 301. Therefore, defendants have failed to show the absence of a genuine issue of material fact, *see Lyles*, 120 N.C. App. at 99, 461 S.E.2d at 350, and the trial court did not err in denying defendants' summary judgment motion grounded upon sovereign immunity.

Plaintiffs also argue defendant Sheriff is not accorded sovereign immunity from suit arising out of his alleged violation of statutory standards. In light of the result reached above, it is unnecessary to address this issue. We note, however, defendants' concession for purposes of their motion to dismiss "that Sheriff Pendergraph's sovereign immunity is waived only up to the amount of his bond (defendant Peerless is the surety on the sheriff's bond)."

Affirmed.

Judges WYNN and McGEE concur.

Judge WYNN concurred prior to 1 October 1998.