CHARLES SCHLOSSBERG, Plaintiff-Appellee v. T.J. (P.J.) GOINS, Individually and in his Official Capacity as a Corporal of the City of Greensboro Police Department, T.D. DELL, Individually and in his Official Capacity as an Officer of the Greensboro Police Department, and THE CITY OF GREENSBORO, Defendants-Appellants

No. COA99-1391

(Filed 29 December 2000)

**1. Appeal and Error— appealability—denial of summary judgment—governmental immunity**

Denials of summary judgment were immediately appealable because the motions were based upon governmental immunity as well as public officer immunity.

**2. Immunity— governmental—waiver—local government risk pool**

In a tort action arising from an investigation and arrest, the city and the officers were entitled to partial summary judgment on grounds of governmental immunity for damages greater than $7,000,000 and for damages $600,000 or less, the city waived immunity for damages greater than $2,000,000 up to $7,000,000 by the purchase of excess liability insurance, and the trial court properly denied summary judgment based on immunity for damages over $600,000 up to $2,000,000. Governmental immunity may be waived by purchasing liability insurance or by participating in a local government risk pool and the city here participated in the Local Government Excess Liability Fund. Although the city contended that this was not a local government risk pool, it could not be concluded as a matter of law that the fund does not constitute a local government risk pool for damages in the $600,000 to $2,000,000 range.

**3. Immunity— public officer—malice**

The trial court correctly denied summary judgment for two officers in their individual capacities in a tort action arising from an investigation and arrest where they claimed public officers' immunity. Plaintiff presented evidence that he was beaten repeatedly and severely and merely resisted, not trying to strike or attack the officers. There was a genuine issue of material fact as to whether the officers in their individual capacities acted with malice, corruption, or beyond the scope of their authority.

Appeal by defendants from order entered 19 July 1999 by Judge Russell G. Walker, Jr. in Superior Court, Guilford County. Heard in the Court of Appeals 20 September 2000.

*Carruthers & Roth, P.A., by Kenneth R. Keller and Norman F. Klick, Jr., for the plaintiff-appellee.*

*Hill, Evans, Duncan, Jordan & Davis, P.L.L.C., by Joseph R. Beatty and Polly D. Sizemore, for the defendants-appellants.*

WYNN, Judge.

Unless waived or consented to, a city and its employees acting in their official capacities are protected from tort actions under the doctrine of governmental immunity. Likewise, public officers' immunity protects public officials from actions for mere negligence in the performance of their duties. The trial court in this case denied the City of Greensboro and its police officers the benefit of both doctrines. We reverse that judgment insofar as its holding is based on governmental immunity, but affirm the trial court's decision to deny summary judgment on the basis of the public officer immunity doctrine.

In April 1998, Charles Schlossberg brought this action against the City of Greensboro, and against Corporal T.J. Goins and Officer T.D. Dell of the Greensboro Police Department in their official as well as individual capacities. The complaint alleged assault, battery, false imprisonment/false arrest and malicious prosecution, and sought punitive damages from Officer Dell and Corporal Goins in their individual capacities for injuries sustained during an incident which occurred in June 1997.

The record on appeal shows that around 10:50 p.m. on 29 June 1997, Officer Dell responded to a call regarding a hit and run accident. When he arrived at the scene of the accident, a witness described the suspect vehicle as a tannish or metallic-colored Jeep Cherokee, occupied by a male, with Kentucky license plate number "ZLP 595." A record check with the Kentucky Department of Motor Vehicles records revealed a vehicle matching the description given by the witness. After speaking with the owner of the damaged vehicle, Officer Dell attempted to locate the suspect vehicle in the vicinity of the accident, but was unsuccessful.

Shortly after midnight, Officer Dell overheard a call on his radio to Officer Julius A. Fulmore concerning a residence at which a man

was reportedly banging on the door and shouting about a wreck. Suspecting that the call related to the earlier hit and run, Officer Dell met Officer Fulmore at the residence to investigate the incident. A tan metallic Jeep Cherokee with Kentucky license plate number "ZLP 595" parked in the driveway of the residence confirmed his suspicions. Officer Dell inspected the vehicle and noticed what appeared to be fresh scratch marks on the bumper and a warm engine.

The events which next occurred are sharply in dispute. According to the officers, they knocked on the door of the house and Mr. Schlossberg answered the door. Officer Dell noted that Mr. Schlossberg fit the description of the driver of the suspect hit and run vehicle. The two officers stated that Mr. Schlossberg became agitated and angry when questioned about the accident, and denied having driven the vehicle recently. He claimed that any scratches on the vehicle were old damage. The officers stated that Mr. Schlossberg cursed repeatedly and stated that if the officers were not going to arrest him, that he was going to go back to bed, and then slammed the door.

Afterwards, Officer Fulmore left the scene and returned to the site of the earlier hit and run to obtain further information. Meanwhile, Officer Dell returned to his patrol car and radioed Corporal Goins who joined him at the residence. Corporal Goins then telephoned Mr. Schlossberg and informed him that the Jeep Cherokee was going to be impounded. Shortly thereafter, Mr. Schlossberg came out of the house and walked towards the Jeep. As he did so, Corporal Goins went to move his patrol car to block the driveway so as to prevent him from driving the Jeep away. According to both Officer Dell and Corporal Goins, Officer Dell yelled at Mr. Schlossberg before he reached the vehicle, instructing him to stop. But Mr. Schlossberg ignored that instruction, retrieved his wallet from the vehicle and started returning to the house. Officer Dell again instructed him to stop, and told him that he was under arrest. Since Mr. Schlossberg continued to ignore the instruction to stop and continued to walk towards his residence, the officers physically apprehended him before he was able to enter the house.

Mr. Schlossberg recalled this sequence of events differently. He stated that when he left the house to get his wallet from the vehicle, the officers were not in sight, and he did not hear any instructions from either Officer Dell or Corporal Goins before he was attacked as he returned to the house and attempted to enter the side door. During the ensuing struggle, the officers repeatedly struck him with their

hands, knees and flashlights, and also sprayed him with mace. He stated that as a result of this struggle, he suffered various injuries, including a broken rib and broken finger.

The record shows that after the officers took Mr. Schlossberg into custody, his wife confessed to the hit and run, and she was therefore charged appropriately. Mr. Schlossberg was charged with obstruction of justice, which charge was ultimately dismissed, following which this action was filed. The City and the police officers answered his complaint and affirmatively pled the defenses of governmental and public officers' immunity. From the trial court's denial of their motions for summary judgment based on those immunities, they appeal to us.

The issues on appeal are: (I) Did the trial court err in failing to find as a matter of law that both the City and the police officers were entitled to governmental immunity? and (II) Did the trial court err in failing to find as a matter of law that the police officers were entitled to public officers' immunity? We hold that under the facts of this case, all of the defendants are entitled to governmental immunity; however, since there is a question of fact on the issue of public officers' immunity, the trial court properly denied summary judgment on that issue.

[1] At the outset, we note that the trial court's interlocutory order denying summary judgment is immediately appealable as affecting a substantial right because it is based upon governmental immunity, as well as public officers' immunity. *Schmidt v. Breeden*, 134 N.C. App. 248, 251, 517 S.E.2d 171, 174 (1999); *see also Jones v. Kearns*, 120 N.C. App. 301, 303, 462 S.E.2d 245, 246, *disc. review denied*, 342 N.C. 414, 465 S.E.2d 541 (1995); *Young v. Woodall*, 119 N.C. App. 132, 135, 458 S.E.2d 225, 227 (1995), *rev'd on other grounds*, 343 N.C. 459, 471 S.E.2d 357 (1996).

On appeal, the City and the police officers jointly assert that the trial court erred in denying their motion for summary judgment because their evidence establishes the insurmountable affirmative defense of governmental immunity.

## I. Governmental Immunity

[2] In North Carolina, governmental immunity serves to protect a municipality, as well as its officers or employees who are sued in their official capacity, from suits arising from torts committed while the officers or employees are performing a governmental function.

SCHLOSSBERG v. GOINS

[141 N.C. App. 436 (2000)]

*See Jones,* 120 N.C. App. at 304, 462 S.E.2d at 247; *Young,* 119 N.C. App. at 135, 458 S.E.2d at 228; *Taylor v. Ashburn,* 112 N.C. App. 604, 436 S.E.2d 276 (1993), *disc. review denied,* 336 N.C. 77, 445 S.E.2d 46 (1994). Furthermore, our courts recognize law enforcement as a governmental function. *See Young,* 119 N.C. App. at 135, 458 S.E.2d at 228 (citing *Hare v. Butler,* 99 N.C. App. 693, 698, 394 S.E.2d 231, 235, *disc. review denied,* 327 N.C. 634, 399 S.E.2d 121 (1990)).

In this case, the record shows that Officer Dell and Corporal Goins acted in their official law enforcement capacities as police officers employed by the Greensboro Police Department when they attempted to apprehend Mr. Schlossberg. As their actions therefore constituted a governmental function, the City of Greensboro, and Officer Dell and Corporal Goins in their official capacities, are generally immune from suit under the doctrine of governmental immunity. That immunity is absolute unless the City has consented to being sued or otherwise waived its right to immunity. N.C. Gen. Stat. § 160A-485(a) (1987); *see Williams v. Holsclaw,* 128 N.C. App. 205, 208, 495 S.E.2d 166, 168, *aff'd,* 349 N.C. 225, 504 S.E.2d 784 (1998). Since the record does not show that the City has expressly consented to being sued by Mr. Schlossberg, his actions against the City and its police officers acting in their official capacities, may only be maintained to the extent the City has waived its governmental immunity.

A city may waive its governmental immunity by purchasing liability insurance or by participating in a local government risk pool under Article 23 of Chapter 58 of the General Statutes. N.C. Gen. Stat. § 160A-485(a); *see Jones,* 120 N.C. App. at 303, 462 S.E.2d at 246; *Young,* 119 N.C. App. at 136, 458 S.E.2d at 228; *Combs v. Town of Belhaven, N.C.,* 106 N.C. App. 71, 73, 415 S.E.2d 91, 92 (1992). Such immunity is waived only to the extent that the city is indemnified by its purchase of insurance or by its participation in the risk pool; that is, to the extent the city does not purchase liability insurance or participate in a local government risk pool, it retains its governmental immunity. N.C. Gen. Stat. § 160A-485(a).

The City of Greensboro admits the existence of a $5,000,000.00 excess liability insurance policy, and it acknowledges that, pursuant thereto, it has waived its governmental immunity for liability for claims greater than $2,000,000.00 up to and including $7,000,000.00. The City further contends that it does not participate in a local government risk pool. On that point, Mr. Schlossberg disagrees with the City. He argues that the City participates in a local government risk

pool which covers claims over $100,000.00 up to and including $2,000,000.00.

Indeed, at the time of the alleged incident, the City participated as a member of the Local Government Excess Liability Fund, Inc. The City describes that Fund as a non-profit corporation that was incorporated in 1986 under Chapter 55A of the General Statutes. In his affidavit, Everett Arnold, the Executive Director of the Guilford City/County Insurance Advisory Committee (which advises the City of Greensboro on insurance matters), described the Fund as a self-insurance plan which "was created to allow participating non-profit government agencies to fund liability claims for which the defense of governmental liability is inapplicable, through a central agency administered by a professional administrator."

The Fund administered three separate funds for the payment of liability claims against its members: Fund A, Fund B and Fund C. Mr. Arnold described the three different funds as follows:

> 4. . . . Fund B is available to pay claims exceeding $100,000.00, up to $600,000.00, subject to the City of Greensboro paying the first $100,000.00. In the event Fund B makes any claims payments, the City of Greensboro is obligated to repay Fund B the entire amount so paid. Fund A was established to pay claims in excess of $600,000.00 up to a maximum of $1,600,000.00, after exhausting the City's direct responsibility for payment of the first $100,000.00, and after Fund B payment of $500,000.00. Fund C was established to provide payment for any amount in excess of $1,600,000.00 up to $2,000,000.00. . . .

> 5. . . . The governmental agencies participating in the Fund share costs only for the administration of the Fund. There is no sharing of risks among the members of the Fund for any claim under $600,000.00. All such claims under $600,000.00 which are paid from Fund B are the direct responsibility of the participating member against which the claim is asserted, and any payments made by Fund B must be repaid by the participating governmental agency.

Mr. Arnold concluded the Fund is not a local government risk pool under Article 23 of Chapter 58 of the General Statutes.

Our Supreme Court construed what constitutes a local government risk pool under N.C. Gen. Stat. §§ 58-23-1 *et seq.* (1994) in *Lyles v. City of Charlotte*, 344 N.C. 676, 477 S.E.2d 150 (1996), *reh'g denied*,

345 N.C. 355, 483 S.E.2d 170 (1997). In *Lyles,* our Supreme Court considered whether the City of Charlotte had waived its sovereign immunity by participating in a local government risk pool when it entered into an agreement with Mecklenburg County and the Charlotte-Mecklenburg Board of Education. Those three entities had created a Division of Insurance and Risk Management (DIRM) to handle liability claims against them. *Id.* Under the agreement, each of the three member entities paid funds into separate trust accounts from which the DIRM would pay claims against each entity. The Supreme Court specifically noted that the funds in each entity's trust account were not commingled with the funds in the other entities' trust accounts. Each entity was responsible for paying the first $500,000.00 for any claim against it out of its own trust account. For claims exceeding $500,000.00 against an entity for which the entity had insufficient DIRM funds to pay in its own trust account, the entity was entitled to borrow funds deposited in the DIRM by the other entities to the extent those funds exceeded $500,000.00. Any funds so borrowed were required to be repaid with interest.

The plaintiff in *Lyles* contended that this arrangement constituted a local government risk pool, as each of the DIRM members had

> the right, in certain circumstances, to use funds contributed by the other entities for the payment of claims, [and] the entities had [thereby] pooled retention of their risks for liability claims and provided for the payment of such claims made against any member of the pool on a cooperative or contract basis.

*Id.* at 679, 477 S.E.2d at 152-53. In holding that this arrangement did not constitute a local government risk pool, the Supreme Court analyzed the DIRM in light of the statutory requirements for such risk pools found in N.C. Gen. Stat. § 58-23-1 *et seq.* First, the Court noted that the statute defines a "local government," for purposes of joining a local government risk pool, as including only counties, cities, and housing authorities—not school boards. *Id.* at 680, 477 S.E.2d at 153; *see* N.C. Gen. Stat. § 58-23-1 (1994). The Court noted that the statute requires that a contract or agreement creating a local government risk pool must contain a provision requiring the pool to pay all claims for which each member incurs liability. *Lyles,* 344 N.C. at 680, 477 S.E.2d at 153; *see* N.C. Gen. Stat. § 58-23-15(3) (1994). Because the DIRM members were required to repay any borrowed amounts, the Court felt that this arrangement did not equate to a payment of claims

by the pool, and did not rise to the level of risk-sharing required by the statute. *Lyles*, 344 N.C. at 680, 477 S.E.2d at 153. The Court also emphasized that the entities did not pool their risks in one common pool, but instead created separate trust accounts for each DIRM member. Moreover, the three entities failed to meet many of the statutory requirements for creating and operating a local government risk pool; and while the Court acknowledged that this fact should not be determinative, it felt that it should be afforded some weight. In concluding that the DIRM arrangement did not constitute a local government risk pool, the Court stated:

> We believe it would be a mistake to hold that a local government may ignore these statutory requirements and create a risk pool to its own liking. The City did not intend to join a local government risk pool, and we do not believe we should hold it has done so by accident.

*Id.* at 681, 477 S.E.2d at 153.

Since *Lyles*, this Court has had few opportunities to further consider the question of what constitutes a local government risk pool, and those decisions have relied on the *Lyles* decision and generally have concerned the same DIRM considered by the Supreme Court in *Lyles. See Kephart by Tutwiler v. Pendergraph*, 131 N.C. App. 559, 507 S.E.2d 915 (1998); *Cross v. Residential Support Services, Inc.*, 129 N.C. App. 374, 499 S.E.2d 771 (1998); *Mullis v. Sechrest*, 126 N.C. App. 91, 484 S.E.2d 423 (1997), *rev'd on other grounds*, 347 N.C. 548, 495 S.E.2d 721 (1998); *Pharr v. Worley*, 125 N.C. App. 136, 479 S.E.2d 32 (1997); cf. *Dobrowolska ex rel. Dobrowolska v. Wall*, 138 N.C. App. 1, 530 S.E.2d 590, *disc. review allowed*, 352 N.C. 588, —— S.E.2d —— (2000).

The issue of whether the Fund in the instant case constitutes a local government risk pool is not as clear as the same question decided in *Lyles* regarding the DIRM. However, in *Dobrowolska*, this Court considered the same Fund at issue in the present case and concluded that summary judgment for the defendants in that case was proper where the plaintiffs sought only $350,000.00 in damages. 138 N.C. App. at 8-9, 530 S.E.2d at 596. Nonetheless, in *Dobrowolska*, we limited that holding to the precise facts of that case by stating that "the Fund cannot be classified as a local government risk pool *as to the present case* because it will not actually pay for any part of the claim." *Id.* (emphasis added).

In this case, Mr. Schlossberg filed a statement of monetary relief under N.C.R. Civ. P. 8(a)(2) seeking $5,000,000.00 for compensatory damages and $5,000,000.00 for punitive damages against Officer Dell and Corporal Goins in their individual capacities. *See* N.C. Gen. Stat. § 1A-1, Rule 8(a)(2) (1999). Thus, our holding in *Dobrowolska* has limited application to this case. Nonetheless, several of the findings regarding the Fund in *Dobrowolska* are relevant to our analysis here.

As discussed at length in *Dobrowolska*, the Fund fails in many respects to comply with the statutory requirements for a local government risk pool. *See Dobrowolska*, 138 N.C. App. at 8, 530 S.E.2d at 595-96. For instance, the members of the Fund include the Guilford County Board of Education and Guilford Technical Community College, neither of which falls within the definition of a "local government" for purposes of joining a local government risk pool as provided in N.C. Gen. Stat. § 58-23-1. According to Mr. Arnold's unrebutted affidavit, the members of the Fund did not give thirty days advance written notice of their intention to organize and operate a risk pool as required pursuant to N.C. Gen. Stat. § 58-23-5 (1994). The members of the Fund did not enter a contract or agreement containing a provision for "a system or program of loss control" as mandated by N.C. Gen. Stat. § 58-23-15(1) (1994). Moreover, the Fund was never intended to be considered a local government risk pool and was not organized to comply with the statutory requirements found in N.C. Gen. Stat. § 58-23-1 *et seq*. Indeed, Mr. Schlossberg presented no evidence to refute Mr. Arnold's statements in his affidavit that the City is required to reimburse the Fund for claims payments made from Fund B. As we noted in *Dobrowolska*, "immunity is not waived when a claim is paid for which the pool is reimbursed, because the pool has not paid the claim and the requirements of N.C. Gen. Stat. § 160A-485 have not been met." 138 N.C. App. at 8, 530 S.E.2d at 596.

On the other hand, the City presented no evidence showing that it is required to reimburse the Fund for claims payments made from either Fund A or Fund C. Also, there is no evidence that the Fund maintains separate accounts for the contributions made by each of its various members. In short, the evidence presented in the instant case does not point us unerringly toward a finding that the Fund *in its entirety* is not a local government risk pool. When viewing all of the evidence in the light most favorable to Mr. Schlossberg, we cannot conclude as a matter of law that the Fund does not constitute a local government risk pool insofar as the City is sued for damages that fall

in the ranges established under Fund A and Fund C—exceeding $600,000.00 and up to and including $2,000,000.00.

Therefore, consistent with our holding in *Dobrowolska*, we conclude that the Fund is not a local government risk pool to the extent the City must reimburse the Fund B claims—over $100,000.00 and up to and including $600,000.00. Furthermore, we conclude that the City, irrespective of its participation in the Fund, is uninsured for claims up to and including $100,000.00, as well as for claims exceeding $7,000,000.00. Accordingly, the City along with Officer Dell and Corporal Goins in their official capacities are entitled to partial summary judgment on grounds of governmental immunity for damages of $600,000.00 or less, and for damages greater than $7,000,000.00. *See Schmidt*, 134 N.C. App. at 256, 517 S.E.2d at 176; *see also Dobrowolska*, 138 N.C. App. at 8-9, 530 S.E.2d at 596.

However, we uphold the trial court's denial of summary judgment on grounds of governmental immunity for the part of Mr. Schlossberg's claim that asserts damages that fall in the ranges of Fund A and Fund C—over $600,000.00 and up to and including $2,000,000.00. Moreover, as previously stated, the City has waived its governmental immunity for damages greater than $2,000,000.00 and up to $7,000,000.00 by its purchase of excess liability insurance.

## II. Public Officers' Immunity

[3] We next consider whether the trial court committed reversible error in denying the motion for summary judgment on grounds that Officer Dell and Corporal Goins do not have public officers' immunity. We uphold the trial court's denial of summary judgment on this ground.

Under the public officers' immunity doctrine, "a public official is [generally] immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Slade v. Vernon*, 110 N.C. App. 422, 428, 429 S.E.2d 744, 747 (1993). Our courts recognize police officers as public officials. *See Jones*, 120 N.C. App. at 305, 462 S.E.2d at 247 (citing *Shuping v. Barber*, 89 N.C. App. 242, 248, 365 S.E.2d 712, 716 (1988)). Thus, police officers enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice. *Id.* (citation omitted); *see Collins v. North Carolina Parole Comm'n*, 344 N.C. 179, 183, 473 S.E.2d 1, 3 (1996) (holding that a pub-

lic officer is immune from personal liability if he "exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption") (citation omitted).

This Court has defined discretionary acts as "those requiring personal deliberation, decision, and judgment." *Jones*, 120 N.C. App. at 306, 462 S.E.2d at 248 (citing *Hare*, 99 N.C. App. at 700, 394 S.E.2d at 236). Also, where a defendant performs discretionary acts as part of his or her official or governmental duties, to sustain a suit for personal or individual liability, a plaintiff must allege and prove that the defendant's acts were malicious or corrupt. *Id.* (citing *Wilkins v. Burton*, 220 N.C. 13, 15, 16 S.E.2d 406, 407 (1941)); *see Epps v. Duke University, Inc.*, 122 N.C. App. 198, 205, 468 S.E.2d 846, 851-52, *disc. review denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). A plaintiff may not satisfy this burden through allegations of mere reckless indifference. *See Robinette v. Barriger*, 116 N.C. App. 197, 203, 447 S.E.2d 498, 502 (1994), *aff'd*, 342 N.C. 181, 463 S.E.2d 78 (1995), *reh'g denied*, 342 N.C. 666, 465 S.E.2d 548 (1996), *overruled on other grounds by Meyer v. Walls*, 347 N.C. 97, 489 S.E.2d 880 (1997).

Undisputedly, Officer Dell and Corporal Goins were on duty as police officers on the night of 29 June 1997. Officer Dell received and responded to the initial call regarding the hit and run accident, and later responded to a radio call that brought him to the residence of Mr. Schlossberg. Officer Dell attempted to obtain information from Mr. Schlossberg, and then called Corporal Goins who arrived at Mr. Schlossberg's residence shortly thereafter. It is further undisputed that Officer Dell and Corporal Goins were acting as public officials executing a governmental function at the time of the incident giving rise to Mr. Schlossberg's suit. Moreover, the decisions made by Officer Dell and Corporal Goins in attempting to restrain and arrest Mr. Schlossberg were discretionary decisions made during the course of performing their official duties as public officers. *See Jones*, 120 N.C. App. at 306, 462 S.E.2d at 248. Therefore, to survive the police officers' motion for summary judgment on the issue of their individual liability, Mr. Schlossberg must have alleged and forecasted evidence demonstrating the officers acted corruptly or with malice.

In his complaint, Mr. Schlossberg asserted separate claims against Officer Dell and Corporal Goins in their individual capacities. In his battery claim, Mr. Schlossberg alleged that the conduct of

Officer Dell and Corporal Goins was "illegal, malicious, intentional, excessive, not reasonably necessary, willful and wanton, corrupt, . . . and beyond the scope of their employment." Mr. Schlossberg's assault claim alleged that the conduct of Officer Dell and Corporal Goins was "beyond the scope of their employment." Likewise, his false imprisonment/false arrest and malicious prosecution claims state that the officers' conduct was malicious and beyond the scope of their employment. In support of these claims, Mr. Schlossberg presented deposition testimony of his wife and Dr. Robert V. Sypher, Jr., a hand specialist who treated his broken finger. He also presented evidence showing that he was beaten repeatedly and severely by Officer Dell and Corporal Goins. Furthermore, Corporal Goins stated in his deposition that Mr. Schlossberg did not try to strike the officers and that he did not feel that they were being attacked by him, but merely resisted.

We conclude that the evidence, when viewed in the light most favorable to Mr. Schlossberg, creates a genuine issue of material fact as to whether Officer Dell and Corporal Goins, in their individual capacities, acted with malice, corruption or beyond the scope of their authority in their arrest of Mr. Schlossberg. Therefore, the trial court properly denied the police oficers' motion for summary judgment regarding Mr. Schlossberg's claims against Officer Dell and Corporal Goins in their individual capacities.

We remand to the trial court for further proceedings consistent with this opinion. The trial court's denial of the motion for summary judgment is,

Affirmed in part, reversed in part, and remanded.

Judges LEWIS and HUNTER concur.