GREGORY, Circuit Judge,
concurring in part and dissenting in part:
I concur in part in Judge Motz’s opinion, which I believe does a very fine job disposing of most of the issues in these cases. However, I dissent from Parts III-B and III-B.l. Unlike the majority, I would dismiss all state common law claims against all individual defendants based on the North Carolina doctrine of official immunity. I cannot agree that the complaints sufficiently allege malicious conduct such that the claims are not barred. Because the majority disposes of the bulk of state common law claims on other grounds, allowing only the Evans plaintiffs’ malicious prosecution claims against Gottlieb and Hi-man to proceed, I focus my partial dissent on the inadequacies of those claims.
The North Carolina doctrine of official immunity protects public officials from personal liability for discretionary acts performed in the course of their official duties, so long as the officers acted without malice or corruption. Collins v. N. Carolina Parole Comm’n, 344 N.C. 179, 473 S.E.2d 1, 3 (1996). Thus, a police officer is protected from personal liability for investigative conduct unless the plaintiffs “allege and prove that the defendant’s acts were malicious or corrupt.” Schlossberg v. Goins, 141 N.C.App. 436, 540 S.E.2d 49, 56 (2000) (citing Jones v. Kearns, 120 N.C.App. 301, 462 S.E.2d 245, 248 (1995)).
*666 “A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.” In re Grad v. Kaasa, 812 N.C. 310, 321 S.E.2d 888, 890 (1984) (citing Givens v. Sellars, 273 N.C. 44, 159 S.E.2d 530 (1968)). “An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others.” Id. at 890-91 (citing Givens, 273 N.C. at 50,159 S.E.2d 530).
Because the plaintiffs chose to bring suit in federal court, the sufficiency of their allegations must be judged against the pleading standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under that standard, a complaint’s “bare assertions” of malicious conduct are not entitled to the assumption of truth. See Iqbal, 556 U.S. at 680-81, 129 S.Ct. 1937. Rather, the complaint must plausibly suggest malicious conduct by alleging “sufficient factual matter” to draw a “reasonable inference” of malice. Id. at 678, 129 S.Ct. 1937. Although the plausibility requirement is not a probability requirement, id., where there is an “obvious alternative explanation” for the conduct alleged, malice may not plausibly be inferred, id. at 682, 129 S.Ct. 1937 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 567, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
The majority does not explain why the complaint plausibly alleges Gottlieb and Himan acted maliciously, but instead merely says it is so. I cannot agree. Stripping the complaint of its conclusory allegations, it does not plausibly suggest the officers acted “wantonly,” in a way that reasonable officers “would know to be contrary to [their] duty,” for the purpose of framing the plaintiffs. In re Grad, 321 S.E.2d at 890. On the contrary, the “obvious alternative explanation” for the officers’ conduct is that they were acting as reasonable, though not perfect, police officers would to investigate Mangum’s rape allegations, which they did not know to be false.
To begin, the complaint alleges that Gottlieb and Himan diligently investigated a case assigned to them by their supervisors, not that they sought to frame the plaintiffs. Consistent with their official duties, the officers interviewed Mangum, interviewed Pittman, interviewed Duke lacrosse players, obtained a search warrant and an NTO, collected DNA evidence, and turned over the full results of their investigation to prosecutor Nifong, candidly briefing him on the case. The complaints also allege that the officers continued the investigation under the direction of Nifong and their police department supervisors. Far from plausibly suggesting the officers acted maliciously to frame the plaintiffs, the “obvious alternative explanation” for their conduct is that they were doing their job and investigating a case assigned to them, in collaboration with the prosecutor.
The plaintiffs make much of Mangum’s inconsistent accounts of the alleged attack and Pittman’s initial denial, alleging on this basis that the detectives knew Man-gum was lying and proceeded with the investigation with the intent of framing Duke lacrosse players. This is simply implausible. Mangum told numerous people, on numerous occasions, that she was raped. Although the details of her accusations shifted, she was known to have been intoxicated on the night of the alleged assault. Further, as the other two complaints make clear, a nurse at Duke Medical Center informed officer Gottlieb that Mangum’s examination had revealed evidence “consistent with sexual assault.” And an email sent by one of the lacrosse players just hours after the alleged attack *667 stated that, “after tonight’s show,” the author planned to have strippers over again and to mxirder them. Given the facts alleged in the three consolidated cases, it is implausible to infer that Gottlieb and Hi-man knew Mangum was lying and therefore acted maliciously to frame the lacrosse players. The fact that an alleged rape victim changes the details of her story does not mean she is lying, nor does a witness’s initial denial always correspond with the truth. Police officers owe a duty to the public to take seriously and investigate allegations of rape — a duty that cannot and should not be dismissed on such flimsy grounds.
Nor can the plaintiffs rest their allegations of malice on the officers’ supposed witness tampering, use of suggestive photo arrays, or fabrication of false DNA evidence. As for the allegations of witness tampering, the complaint alleges that the officers threatened to enforce an outstanding warrant against Pittman if she did not recant her earlier statement that Mangum was lying. But leveraging an outstanding warrant against a recalcitrant witness is hardly beyond the pale of police investigative techniques. Given that this occurred after Mangum told police she had been raped and Gottlieb was informed that medical evidence corroborated her accusations, the obvious alternative explanation is that Gottlieb and Himan were trying to persuade Pittman to tell the truth, not to frame the plaintiffs.
As for the suggestive photo arrays, the complaint does allege that the procedures violated police department policy. However, the obvious explanation for the officers’ conduct is that the police officers were attempting to identify a suspect to further investigate Mangum’s claims, which they did not know were false. Although their photo array techniques were not perfect, a mere deviation from departmental policy, by itself, does not plausibly suggest they acted “wantonly” for the purpose of framing the plaintiffs.
Finally, although the complaint alleges that Gottlieb and Himan were present during the meetings in which Nifong and DNA laboratory personnel decided to withhold potentially exculpatory DNA information, these meetings took place hardly a month into the investigation, before indictments had even been secured. Neither the Constitution nor any law I am aware of requires police officers to disclose potentially exculpatory information at this early stage — either to the grand jury or to suspects — and I do not believe a reasonable police officer would believe such a duty exists. The officers’ failure to do something they were under no obligation to do does not plausibly suggest malice.
Although in retrospect it may be clear to some that Mangum’s accusations were baseless, the complaint does not plausibly allege Gottlieb and Himan knew this to be the case, particularly in light of the corroborating medical information they possessed. Rather, their investigative conduct leading to the plaintiffs’ indictments, though not perfect, is consistent with the conduct of reasonable police officers assigned a rape case. If a complaint of this kind can proceed, I fear that every rape case where a victim has given inconsistent accounts and a witness has changed her statement could subject investigating police officers to personal liability. I do not believe the North Carolina doctrine of official immunity or federal pleading standards can be circumvented so easily, and I fear this Court has done a disservice to both by denying Gottlieb and Himan official immunity.
For these reasons, I dissent from Parts III-B and III.B.l of the majority opinion.