IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1108

Filed 18 June 2025

Scotland County, No. 22CVS269

JAMES HATCHER, Plaintiff,

v.

JEREMY R. RODRIGUEZ, Individually, and JEREMY R. RODRIGUEZ, in his capacity as a member of Laurinburg Police Department, and CITY OF LAURINBURG, Defendants.

Appeal by defendants from interlocutory order entered 5 September 2023 by Judge Dawn M. Layton in Scotland County Superior Court. Heard in the Court of Appeals 17 April 2024.

> *Law Offices of James Scott Farrin, by Coleman M. Cowan, Donald C. Clack, and Hannah L. Lavender, for plaintiff-appellee.*
>
> *Hall Booth Smith, P.C., by Christian J. Ferlan and Scott D. MacLatchie, for defendants-appellants.*

GORE, Judge.

Defendants, Jeremy Rodriguez ("defendant Rodriguez") and the City of Laurinburg (the "City"), appeal the order denying their motion for summary judgment ("MSJ"). The MSJ order is interlocutory but includes a denial of defendant Rodriguez's public official immunity claim. Defendants properly demonstrate that the interlocutory order affects a substantial right, therefore, we have jurisdiction to consider this appeal. *See Bartley v. City of High Point*, 381 N.C. 287, 293 (2022). Having reviewed the briefs, the record, and recent precedent, we affirm.

**I.**

On 19 November 2021, Defendant Rodriguez was in his patrol vehicle at a church parking lot on Old Lumberton Road while on duty for the Laurinburg Police Department ("LPD"). Defendant Rodriguez began working with LPD in 2017 and was assigned a marked patrol vehicle. The interior of the vehicle included a switch that would activate both the siren and the lights when slid to a certain position. A couple months before the incident in November, defendant's vehicle went to the shop for repairs after his "light bar" sustained considerable wiring damage. After the repairs to the vehicle, the mechanic explained a separate siren knob must be turned on to activate both the siren and the lights when he moved the normal switch. Defendant Rodriguez testified he did not attempt to activate his siren and lights between the repair and the November incident, and that he did not know how to activate the siren the day of the incident.

Around 3:50 p.m. on 19 November 2021, defendant Rodriguez heard Corporal Teasley over the radio stating he was at the nearby Walmart to respond to a reported shoplifting incident. Corporal Teasley did not request backup and he did not communicate any concerns with the shoplifter other than to state the female shoplifter might attempt to run on foot. Although Corporal Teasley did not request assistance, defendant Rodriguez decided to respond and assist Corporal Teasley in case the shoplifter was dangerous, based upon his previous experiences. A sergeant and lieutenant who were near the Walmart, communicated over the radio that they

would respond as backup and to follow "routine traffic"; however, defendant Rodriguez stated he did not hear the others' responses at the time. When the sergeant and lieutenant arrived at the Walmart, Corporal Teasley had already apprehended and released the shoplifter with a citation.

Defendant Rodriguez pulled out onto Old Lumberton Road, a two-lane road in a residential area with a school bus route and many side roads, and drove westbound. There were three vehicles driving in front of defendant Rodriguez and double lines on the road such that he could not pass the vehicles. Defendant Rodriguez decided to initiate an emergency response; he drove into the oncoming traffic lane and moved the switch to initiate both the lights and siren, while the lights turned on the siren did not, because the separate siren knob was turned off. Defendant Rodriguez looked down at the controls as he continued in the oncoming traffic lane, driving about 52-mph in the 35-mph speed limit zone. When defendant Rodriguez looked up, he saw that the vehicle two cars in front of him was turning onto a side street. Although he stated he hit his brakes, the crash was instantaneous. Plaintiff was driving the vehicle and sustained serious life-altering injuries.

The LPD assigned an officer to investigate the collision; at the conclusion of the investigation, the officer submitted a report that stated defendant Rodriguez violated multiple standard procedures. The report included a recommendation to issue a reprimand and suspend defendant Rodriguez from police duty. Defendant Rodriguez resigned from the LPD prior to the issuance and suspension.

Plaintiff filed a complaint and an amended complaint against defendant Rodriguez in his individual and official capacities, and against the City of Laurinburg. Plaintiff brought claims for negligence, gross negligence, and wanton negligence; imputed liability of the City for negligence, gross negligence, recklessness, and willful and wanton conduct by its police officer; negligent supervision and inadequate training by the City; a claim for section 20-145 against defendant Rodriguez; and sought punitive damages against both defendants in addition to the compensatory damages. Plaintiff specified, and the City conceded, that the City waived its governmental immunity through its liability insurance under the doctrine of *respondeat superior*.

Defendants filed a motion for summary judgment after discovery. Defendants asserted defendant Rodriguez was entitled to public official immunity and that both the City and defendant Rodriguez were "entitled to judgment as a matter of law." Plaintiff filed multiple affidavits, photographs, a police report, the LPD internal investigation report, the LPD Standard Operation Procedures, defendant Rodriguez's responses to the interrogatories, transcripts of multiple depositions, the radio call, and other forms of exhibits in support of his motion in opposition to summary judgment. On 14 August 2023, the trial court heard arguments from both parties on the motion for summary judgment. After reviewing the submitted materials and hearing arguments, the trial court determined there were genuine issues of material fact on plaintiff's claims against defendants and entered an order on 5 September

2023 denying defendants' motion for summary judgment. Defendants filed an interlocutory notice of appeal seeking review of the order denying the motion for summary judgment. Defendants seek interlocutory appeal by arguing that public official immunity affects a substantial right.

**II.**

Both parties agree that an interlocutory order denying summary judgment is immediately appealable when governmental immunity and public official immunity are involved. *See Thompson v. Town of Dallas*, 142 N.C. App. 651, 653 (2001) ("Orders denying dispositive motions based on the defenses of governmental and public official's immunity affect a substantial right and are immediately appealable.").

Defendants seek de novo review of the order denying their motion for summary judgment. Defendants seek review of the following three issues: (1) whether the trial court erred by determining the claim for gross negligence against Officer Rodriguez involved a genuine dispute of material facts; (2) whether the trial court erred by denying Officer Rodriguez's claim for public official immunity; and (3) whether the trial court erred by not dismissing the claims against the City of imputed liability for inadequate training and supervision. We review a denial of a motion for summary judgment de novo. *Bartley*, 381 N.C. at 293.

> Summary judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion

for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial. Nevertheless, if there is any question as to the weight of evidence summary judgment should be denied.

*In re Will of Jones*, 362 N.C. 569, 573–74 (2008) (cleaned up). Accordingly, we consider defendants' arguments through this standard of review.

**A.**

Defendants argue the trial court erred by denying summary judgment because defendant Rodriguez's conduct "did not rise to the level of gross negligence." Plaintiff seeks damages pursuant to section 20-145, which establishes the standard of care for officers and exempts them from speeding laws when engaged in high-speed chases or emergency responses but does not exempt officers who display a "reckless disregard [for] the safety of others." N.C.G.S. § 20-145 (2023). Our Supreme Court previously established that civil suits against law enforcement for injuries resulting during emergency responses and high-speed chases are based upon a gross negligence standard of care. *Parish v. Hill*, 350 N.C. 231, 238 (1999). Gross negligence is "defined as wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Id.* at 239.

As plaintiff states, "issues of negligence are generally not appropriately decided by way of summary judgment," because the question of whether Officer Rodriguez's conduct "was grossly negligent or showed reckless disregard for the

safety of others are legal conclusions to be drawn from the evidence." *Norris v. Zambito*, 135 N.C. App. 288, 292–93 (1999) (cleaned up). Negligence is only properly decided through summary judgment when "there are no genuine issues of material fact, and an essential element of a negligence claim cannot be established." *Id.* at 293. Our Supreme Court explained that when deciding whether a police officer's actions were grossly negligent, we should consider that:

> an officer must conduct a balancing test, weighing the interests of justice in apprehending the fleeing suspect with the interests of the public in not being subjected to unreasonable risks of injury. Gross negligence occurs when an officer consciously or recklessly disregards an unreasonably high probability of injury to the public despite the absence of significant countervailing law enforcement benefits.

*Jones v. City of Durham*, 168 N.C. App. 433, 444 (2005) (Levison, J., dissenting in part and concurring in part), *aff'd,* 360 N.C. 81 (2005), *opinion withdrawn and superseded on reh'g,* 361 N.C. 144 (2006) (Supreme Court reversing for the reasons stated in the dissent of Judge Levison).

Defendants direct us to consider twelve cases with similar outcomes that each determined the officers in high-speed chases or emergency response calls did not act grossly negligent. *See Parish*, 350 N.C. at 246; *Young v. Woodall*, 343 N.C. 459 (1996); *Estate of Graham v. Lambert*, 282 N.C. App. 269 (2022), *rev'd and remanded by* 898 S.E.2d 888 (N.C. 2024); *Greene v. City of Greenville*, 225 N.C. App. 24 (2013); *Lunsford v. Renn*, 207 N.C. App. 298 (2010); *Holloway v. N.C. Dep't of Crime Control & Pub. Safety*, 197 N.C. App. 165 (2009); *Villepigue v. City of Danville, Va.*, 190 N.C. App.

359 (2008); *Bray v. N.C. Dep't of Crime Control & Pub. Safety*, 151 N.C. App. 281 (2002); *Norris*, 135 N.C. App. at 295; and *Fowler v. N.C. Dep't of Crime Control & Pub. Safety*, 92 N.C. App. 733 (1989). Having considered each case, the similar features throughout are the direct pursuit or emergency response by each officer and the primary role each officer had during the emergency responses. As defendants accurately state, the appellate Courts ultimately determined in each case a lack of gross negligence on the officer's part. But the present case does not involve the necessity of a direct pursuit or an emergency response with defendant Rodriguez taking the primary response role.

Plaintiff relies upon *Jones v. City of Durham* and *Truhan v. Walston* as analogous cases to the present case. In *Jones*, our Supreme Court ultimately reversed this Court's determination because the officer was acting in a backup response role, and the facts in totality were more appropriate for jury determination rather than summary judgment adjudication. 361 N.C. 144, 146 (2006) (adopting dissent of Judge Levison).

Similarly in *Truhan*, the officer was responding in a backup role to provide traffic control assistance for a minor accident. 235 N.C. App. 406, 413 (2014). The officer testified a concern that there was a "violent situation" having believed he heard radio communications state, "a woman was arguing with a man and had pushed him." *Id.* at 413–14. However, the audio recording lacked proof of the evidence, and this Court additionally added that even if the officer "was aware of the

disturbance, there [was] no evidence that the disturbance was serious." *Id.* at 414. Further, the officer was acting against department policy by "initiating emergency response driving without any justifiable reason, and without notifying his department." *Id.* at 420. This Court listed additional evidence viewed in the light most favorable to the nonmoving party and held that the facts were similarly persuasive to *Jones*. *Id.* at 420–21. The *Truhan* Court reversed the trial court's summary judgment and remanded for further proceedings on the claims against the officer. *Id.* at 421.

Every case involving section 20-145 and the gross negligence of a police officer considers and applies three components to determine whether their actions "constituted gross negligence." *Greene*, 225 N.C. App. at 27. These components are: "(1) the reason for the pursuit; (2) the probability of injury to the public due to the officer's decision to begin and maintain pursuit, and (3) the officer's conduct during the pursuit." *Id.*

When reviewing the reason of the pursuit under the first component, we consider: "whether the officer was attempting to apprehend someone suspected of violating the law and whether the suspect could be apprehended by means other than [a] high-speed chase." *Id.* In the present case, viewing the facts in the light most favorable to plaintiff, defendant Rodriguez heard an officer's communication over the radio for a shoplifter at a Walmart and responded, although the officer did not request assistance. The officer who was at the Walmart did not suggest an emergency

response was necessary to apprehend the suspect and was able to apprehend the suspect without an emergency response.

We consider these additional factors under our review of the second component: "(1) time and location of the pursuit, (2) the population of the area, (3) the terrain for the chase, (4) traffic conditions, (5) the speed limit, (6) weather conditions, and (7) the length and duration of the pursuit." *Id.* Viewing the evidence in the light most favorable to plaintiff, defendant Rodriguez initiated an emergency response on a road that is a mix between residential and commercial/urban, and along a school bus route between 3:50 p.m. and 4:00 p.m. in the afternoon; defendant Rodriguez admitted he saw school buses driving along this road prior to his emergency response. There were three vehicles in the lane in front of defendant Rodriguez when he decided to initiate an emergency response, the road was a two lane road with two lines in the center indicating a no pass zone; the speed limit was 35-mph; the weather conditions were uneventful and the road was relatively flat; Officer Rodriguez's emergency response lasted only seconds after driving into the oncoming traffic lane and looking away from the road to initiate his siren before a vehicle (not directly) ahead of him turned left.

Under the third component, we consider the following: "(1) whether an officer made use of the lights or siren, (2) whether the pursuit resulted in a collision, (3) whether an officer maintained control of the cruiser, (4) whether an officer followed department policies for pursuits, and (5) the speed of the pursuit." *Id.* at 27–28.

Viewing the evidence in the light most favorable to plaintiff, defendant Rodriguez turned on his lights but not his siren; the siren knob was turned off in defendant Rodriguez's vehicle, despite his informed knowledge that the knob be turned on for siren activation; within seconds of initiating an emergency response and driving into the oncoming traffic lane, defendant Rodriguez collided with plaintiff as plaintiff made a left-hand turn onto an adjoining road; defendant Rodriguez lost control of his cruiser; the affidavits, interviews, and policy handbook entered into evidence prove defendant Rodriguez did not follow department policies for pursuits; and the evidence reveals defendant Rodriguez drove up to 52-mph within the 35-mph speed zone.

Viewing the evidence produced at summary judgment in the light most favorable to plaintiff a jury could find: defendant Rodriguez responded to a Walmart shoplifting incident although there was no request for assistance; defendant Rodriguez drove on a school bus route around 3:50 p.m. that was partially residential and partially commercial; defendant Rodriguez initiated an emergency response although this was against the department's policy for a property crime; defendant Rodriguez initiated his lights but failed to initiate his siren, and this was also against the department policy; defendant Rodriguez did not know how to operate his siren, despite the informed knowledge, and had not attempted to operate it after repairs were made to the vehicle; defendant Rodriguez drove into the oncoming traffic lane and was going up to 52-mph; defendant Rodriguez looked away from the road and down at his controls when the siren did not turn on; defendant Rodriguez collided

with plaintiff's vehicle at about 52-mph as plaintiff turned left onto an adjoining street; the speed limit was 35-mph; defendant Rodriguez accelerated until he saw and collided with plaintiff; this collision occurred because defendant Rodriguez initiated an emergency response when only a "traffic control" response was proper, which requires officers to follow traffic regulations and drive on a direct route at a normal speed; other officers had responded on the radio that they would back up the officer at the Walmart; and defendant Rodriguez was familiar with the road and had seen school buses driving on that route.

This evidence is analogous to both *Jones* and *Truhan*. Given the affidavits, depositions, interrogatories, and cumulative evidence, a jury could find that defendant Rodriguez's actions "tended to show a high probability of injury to the public despite the absence of significant countervailing law enforcement benefits, and thus raises a genuine issue of material fact on the question of gross negligence." *Truhan*, 235 N.C. App. at 420 (citation omitted). Therefore, the trial court did not err by denying defendants' motion for summary judgment on the gross negligence claim under section 20-145.

**B.**

Defendants argue the trial court erred by determining defendant Rodriguez was not immune from suit through public official immunity. We disagree.

We first address the confusion surrounding governmental immunity for officers in their official capacity as opposed to immunity for officers in their individual

capacity. Both parties refer to the protection of governmental immunity under section 20-145, however, our Supreme Court just recently opined that there is no waiver of governmental immunity under section 20-145. *Estate of Graham*, 898 S.E.2d at 900 (internal quotation marks and citation omitted) ("Because section 20-145 is not a direct, positive, or clear waiver by the lawmaking body, it does not expose municipalities to liability when their agents breach its terms.").[1] However, "[s]ection 20-145 fastens responsibility to individual drivers for their individual acts and therefore applies to individual capacity suits. For those claims, gross negligence is the standard." *Id.*

While plaintiff may not seek liability against the City through the vehicle of section 20-145, it may seek liability through waiver of governmental liability "by the purchase of liability insurance," under section 160A-485. *Id.* at 898, 900; *see* N.C.G.S. § 160-485 (2023) ("Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance."). Further, our Supreme Court clarified that a suit against an officer "in his official capacity" is "merely another way of bringing suit against the City, both claims entail the same analysis and the same result." *Estate of Graham*, 898 S.E.2d at 900 (citation omitted).[2] Plaintiff specified a

---

[1] We recognize the parties did not have access to this recent opinion by our Supreme Court at the time of filing.

[2] We take time to clarify this area of law because both parties although including the necessary claims to preserve both individual capacity and official capacity claims, make statements that have the appearance of conflating these important distinctions. Such conflation of these claims could have legal consequences for the parties as it did for the plaintiff in the *Estate of Graham*.

waiver of governmental immunity by the City through liability insurance, and plaintiff sought relief through the doctrine of *respondeat superior*. Defendants do not appear to challenge the waiver of governmental immunity, but instead argue the trial court erred by not granting the motion for summary judgment because of defendant Rodriguez's public official immunity defense.

Public official immunity is a complete defense for "discretionary acts" public officials commit, in their individual capacity, while in the course and scope of government employment. *Schlossberg v. Goins*, 141 N.C. App. 436, 445 (2000) ("[P]olice officers enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice."). This complete defense is not a "shield[ ] from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Id.* "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Bartley*, 381 N.C. at 296 (citation omitted). "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." *Yancey v. Lea*, 354 N.C. 48, 52 (2001), *superseded on other grounds by* N.C. R. Civ. P. 51. "Gross violations of generally accepted police practice and custom contributes to the finding that officers acted contrary to their duty." *Bartley*, 381 N.C. at 296 (internal quotation marks and citation omitted). Therefore, our determination there is a genuine issue of material fact as to the gross negligence of

defendant Rodriguez pierces defendant Rodriguez's shield of absolute immunity under the public official immunity doctrine. The trial court did not err by denying the motion for summary judgment despite the defense of public official immunity.

## C.

Defendants also argue the trial court erred by not dismissing plaintiff's additional claims of inadequate training and negligent supervision because of the concession of defendant Rodriguez's employment status at the time of the incident. In support of this argument, defendants cite to a case from the United States District Court for the Eastern District of North Carolina and one case from our Supreme Court. *See Johnson v. Lamb*, 273 N.C. 701, 706–07 (1968); *Justice v. Greyhound Lines, Inc.*, 2019 WL 267910 *1, *2 (E.D.N.C. 2019).

Having reviewed these cases, we determine the trial court did not err by allowing these claims to proceed, because although the City concedes defendant Rodriguez was within the course and scope of employment, thus triggering the doctrine of *respondeat superior*, plaintiff also seeks punitive damages. Based upon the case law defendants cite to in support of this argument, punitive damages are not available through the doctrine of *respondeat superior*, but rather through these additional claims. *See Plummer v. Henry*, 7 N.C. App. 84, 90–91 (1969). Because defendants limit their argument to whether these claims should have been dismissed pursuant to the City's concession under the doctrine of *respondeat superior*, we do not

consider the additional question of whether denial of summary judgment was proper for these claims.

## III.

For the foregoing reasons, we determine the trial court did not err by denying defendants' motion for summary judgment.

AFFIRMED.

Judges CARPENTER and WOOD concur.